UNTITED STATES DISTRICT COURT
SOUTHERN DISTRICT IN NEW YORK

| | |
|---|---|
| **AJ Energy LLC,** )<br> )<br>            Plaintiff, )<br> )<br>    -against- )<br> )<br>**WOORI AMERICA BANK, WOORI BANK**, and )<br>**Does 1 through 1-50, inclusive** )<br> ) | Case No. 18-cv-03735 (JMF)<br><br>**FIRST AMENDED<br>COMPLAINT** |

Plaintiff, by the Law Office of Ruth Cam, its attorneys, complaining of the Defendant, respectfully alleges as follows:

### PARTIES & VENUE

1.  Plaintiff AJ ENERGY, LLC ("Plaintiff" or "AJ Energy") is, and at all times relevant has been, a limited liability company created under the laws of the State of Nevada, with its principal place of business in the County of Washoe, State of Nevada. (Exhibit 1).

2.  Defendant WOORI AMERICA BANK ("Woori America Bank") is, and at all times relevant has been, and is a corporation under the laws of the State of New York, with its principal place of business in the County of New York, State of New York.

3.  Plaintiff is informed and believes, that and upon this belief, alleges that, Woori America Bank is a wholly owned subsidiary of Defendant Woori Bank, Korea.

4.  Defendant WOORI BANK ("Woori Bank") is and at all times has been a foreign company organized under the laws of the Republic of Korea, with its principal place of business in Seoul, South Korea.

5.  Defendants DOES 1-50 are sued under these fictitious names as Plaintiff is unaware of the true names and identities of these Defendants.

6.  Upon information and belief, Plaintiff alleges that each such Defendant is, in some form responsible, participated in, or contributed to, the issues of which Plaintiff complains herein and carries legal responsibility. If and when the exact nature, and/or identity, of each such nature and identity of each fictitious is

ascertained by Plaintiff, Plaintiff will amend this complaint. Any reference hereto "Defendant" includes DOES 1-50.

7. Furthermore, Plaintiff is informed and believes and based thereon alleges that each such Defendant in acting as alleged in this complaint, authorized and/or ratified the actions of each of the other Defendants.

8. This New York Court has Jurisdiction over the matter as Defendant Woori Bank is headquartered in New York City and therefore consistent with traditional legal notions of fair play and substantial justice.

9. Further, several witnesses are expected to be situated in New York.

10. Venue is proper as Defendants conducted and are still conducting business in New York City.

## SUMMARY OF ALLEGATIONS

11. This lawsuit arises out of Woori Bank's fraudulent business practices.

12. Plaintiff signed a joint venture agreement with its Korean partner, NRG CO, LTD. ("Partner" or "NRG"), a foreign company organized under the laws of the Republic of Korea and run by Robert Kim, and Hestiun Finance Limited, a company registered in the United Kingdom, on September 21, 2015.

13. Jimmy Kim is a member of NRG and is also a member of AJ Energy, LLC (Exhibit 1).

14. The general provisions under the joint venture agreement state that that the agreement is between three experienced entities who have a desire to make and manage investments in the Republic of Korea. After appropriate due diligence on their respective sides of the agreement it is accepted that the cash funds provided are all from legal, non-criminal origin, are free from all ties and liens, and are good, clean, clear funds.

15. All entities to this agreement shall use the full regulatory compliance of the banking system to conduct transactions between each other. (Exhibit 2).

16. Under the agreement it states that the funds of €3,000,000,000 (hereinafter €3 Billion) are available for investment at Deutsche Bank, AG in Frankfurt in a common account. Hestiun gave NRG power of attorney to conduct the investments. (Exhibit 7).

17. A Common Account like Woori Bank's account W10240001 is a special account used between

Woori Bank and Deutsche Bank for transactions and it is called a common account (common account and/or correspondent account), where it is used worldwide to transact large sums of funds. It is unrealistic to exchange domestic currencies with the currencies requested by the customer/provider, so instead of subtracting the money from the local bank, the corresponding amount is transferred to the customer's account in their bank. This means that said funds sender's account are transferred to the internal account of the domestic customer's bank, i.e. the customer or the supplier is withdrawn from the local bank's account of the buyer who is affiliated with the bank in the country of the sender bank's foreign exchange settlement partner bank.

18. Banks use these types of accounts when internationally transferring funds of Euros, Dollars or other currencies of or around $500,000 or more.

19. A Business Asset agreement was drafted between Hestiun and NRG. (Exhibit 3).

20. AJ Energy, in addition of being a full partner in the joint venture is also on the board of directors in NRG on August 5, 2015. (Exhibit 3 Business Asset Agreement).

21. Hestiun agreed to transfer €3 Billion to the common account which was then transferred to NRG's Account Number 1081-400-676393 with NRG to be credited to NRG's account at Woori Bank (Exhibit 4).

22. The funds were transferred from Deutsche Bank's common account to Woori Bank. (Exhibit 5). In the original complaint Plaintiff's counsel erroneously attached an unrelated document.

23. The transfer named MT 199 Swift message was sent by Deutsche Bank Headquarters with SWIFT CODE DEUTDEFFXXX. It means, Deutsche Bank, with full bank responsibility, are ready, willing and able to transfer the €3 Billion out of Hestiun Finance's Account Number 847259564 to NRG's Account Number 1081-400-676363 at Woori Bank.

24. The transfer details were stated as €3 Billion cash, Transaction ID: STS-NRV/VDS-15/09/72-BVV-17-51 and uploaded to the common account at Woori Bank Headquarter's Account Number W1024001KR for further credit to NRG's Account Number 1081-400-676363 at Woori Bank. (Exhibit 6).

25. Woori Bank pulled the funds from the common account and failed to further credit the funds to

NRG's account at Woori Bank.

26. These funds were to be used to purchase precious commodities and securities. Woori Bank at first promised to return the funds and Plaintiff has yet to have his funds returned.

27. Woori Bank's CEO Lee Kwan-goo is suspected of being the instigator of the theft. After Lee Kwan-goo had left Woori Bank, its new Officers and South Korea's Minister of Strategy and Finance, Choi Sang Mok, promised to return the €3 Billion if AJ Energy would invest more funds into the South Korean Economy.

28. Woori Bank later denied receiving any funds and never returned any funds to Plaintiff. Confirmation of the investment agreement of the €3 Billion is attached as "Exhibit 7."

29. AJ Energy has several off-shore, regular and investment accounts with several banks in South Korea. These kinds of transactions are not uncommon for AJ Energy. (Exhibit 8)

30. Plaintiff felt reassured, given that Plaintiff was in close consultation with officials from South Korea's Ministry of Strategy and Finance, Choi Sang Mok, which included assistance in the opening of AJ Energy's offshore account at Woori Bank, with Woori Bank Officials.

31. AJ Energy entered into an agreement with Maybrook Financial Group Ltd., a British financial company, to invest another €5 Billion for the purpose of investment in government bonds and other securities, investments in government approved projects and initiatives and investments in financial institutions. (Exhibit 9).

32. The transfer of funds was part of a larger business/asset transaction between Plaintiff and Maybrook Financial Group Ltd. A Transfer Slip Information was drafted to summarize the planned €5,000,000,000 (hereinafter €5 Billion). (Exhibit 9).

33. As agreed on February 13, 2017 Plaintiff arranged another transaction from Deutsche Bank to Woori Bank's common account, this time an amount of €5 billion. AJ Energy had opened a new account with the number 1081-400-728598 on September 30, 2016 with Woori Bank. (Exhibit 10).

34. Plaintiffs were reassured by the Officers of Woori Bank and the South Korean Government, especially the Minister of Strategy and Finance.

35. Further, Lee Kwan-goo was no longer with Woori Bank. After the account was set up, AJ Energy

entered into its agreement with Maybrook Financial. Woori Bank then, reinstated Lee Kwan-goo as CEO of Woori Bank shortly after the transaction took place and, once again, Woori Bank pulled the funds from the common account.

36. Plaintiff's account is still open, and Woori Bank is using it as a front to launder money, without ever actually depositing any funds into the account. Their latest transaction was to use an expired business license of AJ Energy and the identification of an unknown man, Erich Herbert, who has no connection at all to AJ Energy, and used a duplicate copy of Plaintiff's agreement with Woori Bank. In at least six other similar fraudulent transactions AJ Energy's account was used. (Exhibit 11).

37. To Plaintiff's shock and dismay, they found out in March 2017, that Lee Kwang-goo had been reinstated as CEO of Woori Bank. On March 24, 2017, then Deutsche Bank CEO Markus Schneck wrote a letter to Lee Kwan-Goo, stating records show that Woori Bank pulled the funds from Common Account W1024001KR on March 8, 2017 but had not placed the funds into AJ Energy's account with Woori Bank.

38. Deutsche Bank further stated that they sent MT199 message on March 3, 2017 to confirm the legitimacy of transaction. The letter further demanded that Woori Bank release the CF to Plaintiff immediately to avoid legal action. (Exhibit 12).

39. A SWIFT Message Type MT199 is an interbank message used between two banks to transmit the value of a bond, SKR (Safe Keeping Receipt) or a free format message engaging two banks' readiness to move forward with a transaction. A MT199 SWIFT message is easily explained as a "chat" message.

40. Pursuant to the Business and Asset Agreement, €5 Billion were to be transferred from Maybrook's account at Deutsche Bank to Woori Bank's common account with Deutsche Bank.

41. These banks were supposed to exchange server information and thereafter Deutsche Bank would place the Cash Funds (hereinafter "CF") as a first tranche to Woori Bank's common account for pulling and further placement into Plaintiff's account at Woori Bank

42. On February 13, 2017, the CF were transferred to Deutsche Bank through Maybrook and a message for issuance of delivery status of the CF from Deutsche Bank was sent to Woori Bank.

43. This message served as receipt for the above transaction and further memorized in writing the legitimacy of the transaction of the CF from Deutsche Bank to Woori Bank verified through the Deutsche Banks Server transmission. (Exhibit 9).

44. In this message Deutsche Bank confirmed that it had transferred €5 Billion via IP/ID Server Transfer for further credit to Plaintiff and that the CF was clean and clear from any legal issues for and on behalf of Deutsche Bank. (Exhibit 13).

45. However, despite the issuance of the MT199 SWIFT messages, Woori Bank did not inform Plaintiff of any issues or problems with the funds.

46. By law, once Woori Bank pulls funds from the common account they are required to place these funds into Plaintiff's account within 72 hours of withdrawal.

47. Woori Bank failed to place the funds on both transactions despite the transmission of the MT199 SWIFT message to Plaintiff's accounts.

48. Woori Bank intentionally, fraudulently and maliciously denied receiving the funds despite the MT199 SWIFT messages to confirm the transactions upon information and belief the funds had been placed into a transit account, disregarding any ownership rights of Plaintiff.

49. Therefore, Plaintiff is seeking the recovery of all its funds and additional punitive damages according to proof.

## AS AND FOR A FIRST CAUSE OF ACTION
*(Fraud - Against Woori Bank)*

50. Plaintiff realleges and incorporates paragraph 1-49 as though fully set forth.

51. AJ Energy has attempted to retrieve the €3 billion since they became aware of the fraudulent transaction, Woori Bank's Officer and the Minister of Finance of South Korea lured Plaintiff into investing more money with the promise of the return of the €3 billion. Plaintiffs relied on this promise to their detriment.

52. AJ Energy, Woori Bank's Officers and the Minister of Finance of South Korea discussed in exactly how the investment of €5 billion into South Korea would be beneficial to Plaintiff and to the South Korean

Economy. The investment purpose of the €5 billion was discussed in great detail and with specificity. AJ Energy relied on the promises made by Woori Bank Officers and the Minister of Finance of South Korea. (Exhibit 9)

53. On February 13, 2017, the funds were transferred to Deutsche Bank through Maybrook and a message for issuance of delivery status of the funds from Deutsche Bank was provided to Woori Bank.

54. This message served as receipt for the above transaction and further memorized in writing the legitimacy of the transaction of the funds from Deutsche Bank to Woori Bank. (Exhibit 9 and Exhibit 12).

55. In this message, Deutsche Bank confirmed that it had transferred €5 billion via IP/ID Server Transfer for further credit to Plaintiff and the funds were clean and clear from any legal issue for and on behalf of Deutsche Bank. (Exhibit 9).

56. Woori Bank was well aware, as they had made the promise that the money would dedicated to be invested in specific types of investments like government bonds and other securities, investments in government approved projects and initiatives and investments in financial institutions and the South Korean Shipping Industry. (Exhibit 9).

57. Plaintiff relied on Woori Bank's material representation that these funds would be transferred into its account within 72 hours after being pulled from the common account.

58. Woori Bank was aware that it was legally obligated to transfer the funds into Plaintiff's account within 72 hours after pulling the funds, as they had represented to Plaintiffs but never intended to follow through.

59. There is an interbank agreement detailing the responsibilities between Deutsche Bank and Woori Bank regarding server to server transactions.

60. With that said, it is Woori Bank's legal and fiduciary duty to credit its client's account once the funds are pulled from the common account at Deutsche Bank as instructed in the screenshot and MT199 SWIFT message. (Exhibit 9 and Exhibit 12).

61. Plaintiff justifiably relied on Woori Bank's representation of legal and fiduciary duties towards Plaintiff and the plans Defendants specially laid out for investing the money, to its detriment.

62. After the funds were withdrawn from the common account, Plaintiff reasonably relied on the

representation that the funds would be deposited into Plaintiff's account within 72 hours.

63. Instead Woori Bank pulled the funds from the common account without any intent of ever transferring the CF into Plaintiff's account.

64. Woori Bank intentionally, fraudulently and maliciously withheld the funds from Plaintiff and instead transferred the funds into its own transit account.

65. The funds were never transferred into Plaintiff's account and therefore Plaintiffs and their partners were damaged in the amount of €8,000,000,000 (hereinafter €8 Billion)

66. Defendants intentionally, wrongfully, fraudulently and maliciously placed the CF into its own transit account and denied ever having received the CF.

**AS AND FOR A SECOND CAUSE OF ACTION**
*(Negligent Misrepresentation - Against Woori Bank)*

67. Plaintiff realleges and incorporates paragraph 1-66 as though fully set forth.

68. Woori Bank agreed to accept transfer of monies from Deutsche Bank into Woori Bank's common account with Deutsche Bank.

69. Woori Bank's Officers and the Minister of Finance of South Korea discussed exactly how the investment of €5 billion into South Korea would be beneficial to Plaintiff and to the South Korean Economy. The investment purpose of the €5 billion was discussed in great detail.

70. Woori Bank was obligated to transfer these funds into Plaintiff's account.

71. Woori Bank also is legally obligated to deposit the funds into Plaintiff's account with Woori Bank within 72 hours of withdrawing the funds from the common account.

72. Plaintiff was known to Woori Bank and Woori Bank was aware that the funds would be placed into specific investments after it was supposed to be deposited into Plaintiff's account.

73. As a holder of the account and owner of the funds, Plaintiff was owed a legal duty by Defendants to exercise reasonable care.

74. Further, they were obligated to make truthful and accurate representations about their

commitments and true intentions to Plaintiff as to how these funds were to be used.

75. Woori Bank was aware that it was obligated to place the funds into Plaintiff's account after pulling it from the common account.

76. Woori Bank is legally obligated to place Plaintiff's funds into Plaintiff's account after pulling the funds from the common account.

77. Woori Bank's negligence and malfeasance regarding the pulling of the funds from the common account, led to Woori Bank depositing these funds into their own transit account instead of Plaintiff's account.

78. Defendant is required to deposit the funds into Plaintiffs account within 72 hours after the funds were pulled from the common account.

79. Plaintiff never received of the funds they had transferred into Woori Bank's common account and was damaged in the amount of or about €8 Billion

## AS AND FOR A THIRD CAUSE OF ACTION
*(Conversion - Against Woori Bank)*

80. Plaintiff realleges and incorporates paragraph 1-79 as though fully set forth.

81. Plaintiff transferred the funds from Deutsche Bank to Woori Bank in to make specific investments as suggested by Woori Bank's officers and the Minister of Finance, Choi Sang Mok. The amount of money and the investment purposes were stated in detail by Woori Bank. (Exhibit 9)

82. Woori Bank was in legal possession of the funds in the common account with Deutsche Bank.

83. Woori Bank knew that it was obligated to deposit the funds into Plaintiff's account within 72 hours after pulling the funds from the common account.

84. Woori Bank pulled the funds from the common account, and thereby losing the legal right to possession of the funds after 72 hours.

85. Further, Woori Bank failed to deposit the funds into Plaintiff's account thereby interfering with Plaintiff's right to possession and ownership of the €8 Billion.

86. As a result, Plaintiff never received any of the funds that it legally owned and was damaged in the amount of or about €8 Billion.

87. Plaintiff realleges and incorporates paragraph 1-87 as though fully set forth.

88. Plaintiff and Deutsche Bank had engaged in a transaction where funds in the amount of €3 Billion were placed into a common account held by Woori Bank in and then pulled to be placed into Plaintiff's account.

89. The funds were intended to be used by Plaintiff to make specific investments to its benefits and the South Korean Benefits.

90. Woori Bank, through Lee Kwang-goo or any other officers had pulled the funds but never transferred them into Plaintiff's account.

91. After Lee Kwang-goo had left Woori Bank as CEO, Plaintiff reasonably believed that another transaction would not lead to fraudulent actions by Woori Bank especially after it was assured that the money would be used for specific investments intended to benefit the South Korean economy as well as Plaintiff.

92. Woori Bank accepted the transfer €5 Billion of the funds into its common account at Deutsche Bank.

93. Woori Bank was obligated to credit to the Plaintiff's account the amounts stated, in this case, a total of €5,000,000,000 (five billion euros), within 72 hours of Woori Bank pulling the money from the common account.

94. Woori Bank then pulled the funds from the common account but instead of depositing it into Plaintiff's account it transferred the CF into its own transit account.

95. Woori Bank failed to deposit the money into Plaintiff's account as legally obligated. Plaintiff is therefore entitled to the its money as an open account item.

96. There is an interbank agreement on the use of the common account between Deutsche Bank and Woori Bank detailing fiduciary and legal duties.

97. Accordingly, Woori Bank is legally obligated to credit Plaintiff as instructed in the transfer screenshot and MT 199 SWIFT message within 72 hours of Woori Bank pulling the funds from the common

account.

98. Woori Bank never deposited the specific amount of €5 Billion into Plaintiff's account with Woori Bank. Therefore, Plaintiff is owed €5 Billion by Woori Bank.

## AS AND FOR A FOURTH CAUSE OF ACTION
*(Unjust Enrichment - Against Woori Bank)*

99. Plaintiff realleges and incorporates paragraph 1-98 as though fully set forth.

100. When Plaintiff and Deutsche Bank transferred money in the amount €3 Billion first and €5 Billion, in a second transaction, into Woori Bank's common account, Woori Bank had access and possession of Plaintiff's funds.

101. Plaintiff had transferred a total of €8 Billion into Woori Bank's common account at Deutsche Bank.

102. After withdrawing the funds, Woori Bank, instead of transferring the funds into Plaintiff's account, as obligated, deposited the money into its own transit account.

103. Woori Bank was therefore enriched in the amount of €8 Billion.

104. Woori Bank was enriched by retaining the funds for itself instead of moving the funds into Plaintiff's account at Plaintiff's expense.

105. In equity and good conscience, Plaintiff is entitled to the return of all funds Woori Bank kept for itself, including all costs the Plaintiff incurred to recover its funds.

## AS AND FOR A FIFTH CAUSE OF ACTION
*(Breach of Contract - Against Woori Bank)*

106. Plaintiff realleges and incorporates paragraph 105 as though fully set forth.

107. In or about September or October 2015, Woori Bank promised AJ Energy that, if it invested €3 Billion in South Korean These funds were to be used to purchase precious commodities and government securities. (Exhibit 5).

108.     Plaintiff performed his agreement by transferring the funds of €3 Billion into Woori Banks common account with Deutsche Bank.

109.     Woori Bank breached the agreement by not transferring the funds into Plaintiff's account with Woori Bank, as they had promised and agreed to.

110.     By not performing its part of the agreement, Woori Bank breached the contract.

111.     Plaintiff was damaged in the amount of €3 Billion caused by Woori Bank not performing their part of the agreement. (Exhibit 5)

**AS AND FOR A SIXTH CAUSE OF ACTION**
*(Breach of Contract - Against Woori Bank)*

112.     Plaintiff realleges and incorporates paragraph 111 as though fully set forth.

113.     On or around September 2016, AJ Energy and Woori Bank entered in an agreement as follows: Plaintiff's €3 Billion would be returned to its rightful owner if AJ Energy agreed to a €5 Billion investment which would then invested in specific types of investments like government bonds and other securities, investments in government approved projects and initiatives and investments in financial institutions and the South Korean Shipping Industry. (Exhibit 9).

114.     Woori Bank had promised to invest the funds into these specific investments and AJ Energy agreed to provide €5 Billion for these purposes.

115.     On February 13, 2017 AJ Energy performed its part of the agreement by transferring the funds to Woori Bank's common account with Deutsche Bank, with the clear understanding that the funds would be transferred into AJ Energy's account with Woori Bank. (Exhibit 9)

116.     Woori Bank breached the agreement by not transferring the funds into AJ Energy's nor investing the money as agreed upon, on Plaintiff's behalf.

117.     As result of Woori Bank's breach of the agreement between Woori Bank and AJ Energy, AJ Energy was damaged in an amount of €5 Billion.

**WHEREFORE,** Plaintiff prays as follows:

1. On the First Cause of Action, monetary damages at an amount to be proven at trial but in no case less than €8,000,000,000 (eight billion euros), as well as punitive damages and exemplary damages to be determined by the Court;

2. On the Second Cause of Action, monetary damages at an amount to be proven at trial but in no case less than €8,000,000,000 (eight billion euros);

3. On the Third Cause of Action, monetary damages at an amount to be proven at trial but in no case less than €8,000,000,000 (eight billion euros);

4. On the Fourth Cause of Action, a judicial declaration that Defendants held the CF as constructive trustees for the benefit of Plaintiff and award of the resulting monetary damages at an amount to be proven at trial but in no case less than €8,000,000,000 (eight billion euros);

5. On the Fifth Cause of Action, restitution at an amount to be proven at trial but in no case less than €8,000,000,000 (eight billion euros);

6. On the Sixth Cause of Action Plaintiff asks that his €3,000,000,000 (three billion euros) investment to be awarded to its rightful owner as to make Plaintiff whole;

7. On the Seventh Cause of Action Plaintiff asks that his €5,000,000,000 (five billion euros) investment awarded to its rightful owner as to make Plaintiff whole;

8. Additionally, on all causes of action, Plaintiff asks for costs, disbursements, other expenses, attorney's fees, pre-judgment interest and such other and further relief as this Court deems just and proper.

///
///
///
///
///

DATED: May 25, 2018
Santa Ana, California

                                      Respectfully Submitted,

                                      The Law Office of Ruth Cam
*Attorney for Plaintiff*

_____
By: Ruth Cam, Esq.
2030 E. 4th St.
Suite 218A
Santa Ana, CA 92705
Phone: 714-488-9934
Fax: 844-272-6631 (Not for service)
camlawyer@protonmail.com