UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AJ ENERGY LLC, | ) | Case No. 18-cv-03735-JMF (BCM) |
| | ) | |
| Plaintiff, | ) | **ORAL ARGUMENT** |
| | ) | **REQUESTED** |
| v. | ) | |
| | ) | |
| WOORI AMERICA BANK, WOORI BANK, and | ) | |
| Does 1 through 50, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
4 Times Square
New York, New York 10036
Tel: (212)735-3000
Fax: (212) 735-2000

*Counsel for Woori Bank and Woori America Bank*

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ............................................................................................1

II. SUMMARY OF ALLEGATIONS ......................................................................................4

    A.    The Parties ...............................................................................................................4

    B.    The Alleged €3 Billion Wire Transfer .....................................................................5

    C.    The Alleged €5 Billion Wire Transfer .....................................................................7

III. ARGUMENT ...................................................................................................................8

    A.    The FAC's Facially Implausible Allegations Fail To State A Claim ......................8

    B.    Each Individual Cause Of Action Also Fails To State A Claim ............................12

            1.    The Fraud Cause Of Action Fails ..............................................................12

            2.    The Negligent Misrepresentation Cause Of Action Fails ..........................15

            3.    The Conversion Cause Of Action Fails .....................................................16

            4.    The Unjust Enrichment Cause Of Action Fails .........................................18

            5.    The Breach Of Contract Causes Of Action Fail ........................................19

    C.    The FAC States No Cause Of Action Against Woori America ............................20

    D.    In The Alternative, The FAC Should Be Dismissed Under The Doctrine Of Forum Non Conveniens ...................................................................................21

IV. CONCLUSION................................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*333 East 60th Street, Inc. v. New York State Liquor Authority*,
    No. 08 Civ. 4147(RJS), 2008 WL 4104012 (S.D.N.Y. Aug. 29, 2008) ..............................8

*Acevado v. Citibank, N.A.*,
    No. 10 Civ. 8030 (PGG), 2012 WL 996902 (S.D.N.Y. Mar. 23, 2012)...........................17

*In re Agria Corp. Securities Litigation*,
    672 F. Supp. 2d 520 (S.D.N.Y. 2009)........................................................................8, 12

*AJ Energy, LLC v. Woori America Bank*,
    No. 30-2017-00942033-CU-MC-CJC (Sup. Ct. Orange Cty. filed Sept. 6, 2017)..............2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................8

*Beautiful Jewellers Private Ltd. v. Tiffany & Co.*,
    438 F. App'x 20 (2d Cir. 2011) ....................................................................................19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................8

*Buonasera v. Honest Co.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016)..........................................................................19

*Childers v. New York & Presbyterian Hospital*,
    36 F. Supp. 3d 292 (S.D.N.Y. 2014).............................................................................19

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777 (2012) ..................................................................................................19

*Dobroshi v. Bank of America, N.A.*,
    65 A.D.3d 882 (1st Dep't 2009) ...................................................................................16

*Employees' Retirement System of Government of the Virgin Islands v. Blanford*,
    794 F.3d 297 (2d Cir. 2015)..........................................................................................12

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
    12 N.Y.3d 553 (2009) ..................................................................................................12

*First Union National Bank v. Paribas*,
    135 F. Supp. 2d 443 (S.D.N.Y. 2001), *aff'd sub nom. FUNB v. Arab African*
    *International Bank*, 48 F. App'x 801 (2d Cir. 2002) .......................................................24

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
    17 N.Y.3d 565 (2011) ........................................................................................16

*Greenspan v. Allstate Insurance Co.*,
    937 F. Supp. 288 (S.D.N.Y. 1996) ...............................................................13, 14

*Guidi v. Inter-Continental Hotels Corp.*,
    224 F.3d 142 (2d Cir. 2000)..............................................................................23

*Hanwha Life Insurance v. UBS AG*,
    127 A.D.3d 618 (1st Dep't 2015) .....................................................................22

*Holborn Corp. v. Sawgrass Mutual Insurance Co.*,
    No. 16–cv–09147 (AJN), 2018 WL 485975 (S.D.N.Y. Jan. 17, 2018)............12

*Honshu Shipping Co. v. M/V Trade Sale*,
    No. C 04-1481 VRW, 2005 WL 3676097 (N.D. Cal. Apr. 28, 2005)..............22

*Iragorri v. United Technologies Corp.*,
    274 F.3d 65 (2d Cir. 2001)...........................................................................22, 23

*J.P. Morgan Securities Inc. v. Ader*,
    127 A.D.3d 506 (1st Dep't 2015) .....................................................................15

*JPMorgan Chase Bank, N.A. v. Freyberg*,
    171 F. Supp. 3d 178 (S.D.N.Y. 2016)..............................................................16

*Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd.*,
    257 F. Supp. 3d 348 (S.D.N.Y. 2017)..............................................................15

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014)...........................................................................8, 12

*LaSala v. Lloyds TSB Bank, PLC*,
    514 F. Supp. 2d 447 (S.D.N.Y. 2007)..........................................................22, 23

*In re Livent, Inc. Noteholders Securities Litigation*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)............................................................8, 20

*Maalouf v. Salomon Smith Barney, Inc.*,
    No. 02 Civ. 4770 (SAS), 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003) ..........16

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) ........................................................................................18

*Manufacturers Hanover Trust Co. v. Chemical Bank*,
    160 A.D.2d 113 (1st Dep't 1990) .....................................................................16

*Metropolitan Transportation Authority v. Triumph Advertising Productions*,
    116 A.D.2d 526 (1st Dep't 1986) .......................................................................14

*Miller v. Wells Fargo Bank International Corp.*,
    540 F.2d 548 (2d Cir. 1976).............................................................................17

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993).............................................................................14

*Niceforo v. UBS Global Asset Management Americas, Inc.*,
    20 F. Supp. 3d 428 (S.D.N.Y. 2014)................................................................18

*Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003).............................................................................20

*In re Old CarCo LLC*,
    No. 11 Civ. 5039(DLC), 2011 WL 5865193 (S.D.N.Y. Nov. 22, 2011)............8

*In re Optimal U.S. Litigation*,
    886 F. Supp. 2d 298 (S.D.N.Y. 2012)..............................................................21

*PetEdge, Inc. v. Garg*,
    234 F. Supp. 3d 477 (S.D.N.Y. 2017)..............................................................15

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003)...............................................................................22

*Soo Line Railroad Co. v. St. Louis Southwestern Railway Co.*,
    125 F.3d 481 (7th Cir. 1997) ...........................................................................20

*Steiner v. Anbrook Industries, Ltd.*,
    No. 17-cv-5187 (KBF), 2018 WL 1664978 (S.D.N.Y. Apr. 4, 2018)..............20

*Taizhou Zhongneng Import & Export Co. v. Koutsobinas*,
    509 F. App'x 54 (2d Cir. 2013) .......................................................................15

*Tevdorachvili v. Chase Manhattan Bank*,
    103 F. Supp. 2d 632 (E.D.N.Y. 2000) ...................................................16, 17, 18

*USHA (India), Ltd. v. Honeywell International, Inc.*,
    421 F.3d 129 (2d Cir. 2005).............................................................................22

*Valley Lane Industries Co. v. Victoria's Secret Direct Brand Management, L.L.C.*,
    455 F. App'x 102 (2d Cir. 2012) .....................................................................19

*Wexselblatt v. Bank of Boston International*,
    666 F. Supp. 513 (S.D.N.Y. 1987) ..................................................................17

## RULES

Fed. R. Civ. P. 5.2(a)(4)................................................................................................5

Fed. R. Civ. P. 8...............................................................................................8, 12, 20

Fed. R. Civ. P. 8(a) .....................................................................................................2

Fed. R. Civ. P. 9(b) .......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................................2, 20

Defendants Woori America Bank ("Woori America") and Woori Bank (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice all claims asserted against them in the First Amended Complaint (the "FAC") filed by AJ Energy LLC ("Plaintiff").  (Dkt. 19.)

## I. PRELIMINARY STATEMENT

The FAC's six causes of action depend entirely on the claimed existence of two wire transfers totaling €8 billion.  Plaintiff claims that both transfers were allegedly sent from a Deutsche Bank account held by one of Plaintiff's partners to a Deutsche Bank "common account" held by Woori Bank.  According to the FAC, Woori Bank was supposed to deposit these funds in Plaintiff's account (or the account of its partner), but allegedly kept the money for itself.  Woori Bank's CEO is alleged to have masterminded this blatant theft of what amounts to nearly $10 billion.

According to the FAC, the first €3 billion went missing in 2015, but Plaintiff took no action because its communications with Woori Bank and the Korean government made Plaintiff feel "reassured."  Despite the enormous allegedly missing sum, Plaintiff claims it authorized a second transaction, this time for €5 billion, to the exact same "common account."  Deutsche Bank's Chief Financial Officer is alleged to have personally intervened on Plaintiff's behalf by writing and hand-signing a message demanding that €5 billion be released to Plaintiff "immediately to avoid legal action."  The CFO of Deutsche Bank allegedly vouched for Plaintiff by writing that the funds are "clean and clear from any legal issue."

These facially implausible allegations are fabrications, along with the two alleged wire transfers and the documents attached to the FAC purporting to evidence them.  Defendants have investigated these alleged transactions and possess evidence, including sworn testimony

from Deutsche Bank, denying the alleged wire transfers and the existence of the "common account," as well as a submission by Deutsche Bank to a Korean court in a case brought by Plaintiff's alleged business partner denying the existence of the alleged €3 billion wire transfer (the only transaction alleged in that case, which was recently dismissed for lack of evidence). Defendants provided that evidence to Plaintiff, who nevertheless proceeds with this suit.[1]

Fortunately, Rules 8(a), 9(b), and 12(b)(6) supply this Court with the tools to dismiss the FAC, ***even without reference to that evidence*** or anything else outside the four corners of the pleading. Under these rules, Plaintiff's false allegations simply fail to state a claim, and in any event do not belong in this forum.

As a threshold matter, Plaintiff's FAC falls far short of Rule 8's plausibility requirement. To name just a few of the most glaringly implausible allegations: the two alleged wire transfers bear identical reference numbers and transaction ID numbers despite allegedly occurring months apart; the documents attached to the FAC purporting to evidence the wire transfers are rife with unexplained oddities, including internally inconsistent transfer dates, recipients, and beneficiaries; two messages purportedly signed by Deutsche Bank's CFO and Chief Risk Officer ("CRO") have different signatures on them; and with respect to the alleged €3 billion transaction, the FAC attaches documents that show the transfer of funds occurred *before* the agreement to transfer such funds was made. Although Rule 8 obliges the Court to accept *well pled* allegations as true, facially implausible and internally inconsistent pleadings supported by suspect documents do not meet Plaintiff's burden to allege a short and plain statement upon

---

[1] The FAC also fails to disclose that Plaintiff filed a substantially similar lawsuit against Woori Bank and Woori America in California state court on September 6, 2017, which alleged only the €5 billion transaction, but unilaterally dismissed it without serving either Defendant after falsely informing that court that settlement discussions were ongoing. *See AJ Energy, LLC v. Woori Am. Bank*, No. 30-2017-00942033-CU-MC-CJC (Sup. Ct. County of Orange).

which relief can be granted.  The FAC can and should be dismissed on that ground alone.

> But, even if the threshold plausibility standard were met (and it is not), each of Plaintiff's claims suffers from additional legal defects.  First, Plaintiff's fraud and negligent misrepresentation claims are subject to the heightened pleading requirements of Rule 9(b).  The FAC does not come close to satisfying this standard.  It never identifies any particular misrepresentation, much less who made it, who received it, when it was made, or where it was made.  The negligent misrepresentation claim fails for the additional reason that, as a matter of law, there is no special relationship (an essential element of the claim) between a bank and depositor.

> Plaintiff's hodgepodge of other claims also miss the mark.  The conversion claim fails because funds on deposit with a bank are no longer the property of a depositor, and therefore cannot be converted.  And, with respect to Plaintiff's claim for conversion of the €3 billion transfer, Plaintiff has not even pled that it had any possessory right to those funds— indeed, the funds allegedly belong to a third party.  The unjust enrichment claim merely duplicates the other alleged torts, which bars that cause of action under New York law. Plaintiff's breach of contract claims fail because it has not identified the contract at issue, let alone the specific provision allegedly breached.

> Finally, even if Plaintiff could somehow state a plausible claim against Woori Bank, there is no alleged basis for finding Woori America liable for anything.  The FAC identifies no act or omission by Woori America whatsoever and fails to even mention Woori America after paragraph three.

> With the exception of the new (but facially defective) breach of contract claims, all these arguments were included in Defendants' motion to dismiss the initial Complaint.  Yet

Plaintiff's amended pleading fails to cure any of the problems.  To the contrary, and as shown in detail below, the core allegations are unchanged and the new documents attached to the FAC raise more questions than they answer.  Defendants respectfully request that this Court dismiss the FAC with prejudice.[2]

## II. SUMMARY OF ALLEGATIONS

### A.  The Parties

Plaintiff is a Nevada limited liability company, whose exact business is not stated. (FAC ¶ 1.)  Plaintiff alleges that it has three business partners, who were among the senders and recipients of the two wire transfers alleged in the FAC.  "NRG Co. Ltd." is allegedly Plaintiff's "Korean partner," and Plaintiff "is also on the board of directors in NRG."  (*Id.* ¶¶ 12, 20.) Plaintiff and NRG Co. allegedly have a joint venture agreement and a "Business Asset agreement" with "Hestiun Finance Limited, a company registered in the United Kingdom."  (*Id.* ¶¶ 12, 19.)   According to the FAC, "Hestiun gave NRG power of attorney to conduct the investments," (*id.* ¶ 16), vaguely defined as involving "precious commodities and securities" and the "South Korean Economy."  (*Id.* ¶¶ 26, 52.)  Plaintiff also claims to be party to an unspecified "larger business/asset transaction" with "Maybrook Financial Group Ltd." whose business is not specified.  (*Id.* ¶ 32.)  The FAC does not state how Plaintiff obtained access to nearly $10 billion.

Woori Bank is "organized under the laws of the Republic of Korea, with its principal place of business in Seoul, South Korea."  (*Id.* ¶ 4.)[3]  Plaintiff and NRG Co. have accounts at Woori Bank.  (*Id.* ¶¶ 24, 33.)  "Woori Bank's CEO Lee Kwan-goo" is "suspected" by

---

[2] Defendants reserve their right to seek sanctions, including pursuant to Federal Rule of Civil Procedure 11.

[3] The FAC also inconsistently alleges that "[t]his New York Court has Jurisdiction over the matter as Defendant Woori Bank is headquartered in New York City."  (FAC ¶ 8.)  Presumably, this is a typographical error, and Plaintiff meant to allege that Woori *America* is headquartered in New York City.  (*See id.* ¶ 2.)

Plaintiff "of being the instigator of the theft."  (*Id.* ¶ 27.)  The FAC also baselessly asserts that Woori Bank is engaged in ongoing money laundering using Plaintiff's bank account (*id.* ¶ 36), but no cause of action appears to turn on that allegation.

Woori America is "a corporation under the laws of the State of New York, with its principal place of business in the County of New York, State of New York," and is "headquartered in New York City."  (*Id.* ¶¶ 2, 8.)  Nothing else is alleged about Woori America.

## B.    The Alleged €3 Billion Wire Transfer

According to the FAC, on an unspecified date in 2015, "Hestiun agreed to transfer €3 Billion to the common account which was then transferred to NRG's Account Number XXXX-XXX-XX6393 with NRG to be credited to NRG's account at Woori Bank."  (*Id.* ¶ 21.)[4] Plaintiff alleges that "[a] Common Account like Woori Bank's account … is a special account used between Woori Bank and Deutsche Bank for transactions and it is called a common account (common account and/or correspondent account), where it is used worldwide to transact large sums of funds."  (*Id.* ¶ 17.)  Woori Bank allegedly "pulled the funds from the common account and failed to further credit the funds to NRG's account at Woori Bank."  (*Id.* ¶ 25.)  Although the funds have allegedly been missing since 2015, "Plaintiff felt reassured, given that Plaintiff was in close consultation with officials from Korea's Ministry of Strategy and Finance" and unnamed officers of Woori Bank.  (*Id.* ¶ 30.)

The FAC refers to Exhibit 5 as evidence of the alleged €3 billion wire transfer. (FAC ¶ 22.)  Exhibit 5 appears to be a message sent through the Society for Worldwide Interbank Telecommunication ("SWIFT") messaging system (*see id.* ¶ 23), concerning a wire transfer of €3 billion involving Hestiun Finance Limited and NRG Co.  However, the document

---

[4] This account number and the others referenced below have been partially redacted.  *See* Fed. R. Civ. P. 5.2(a)(4).

lists a "DATE OF UPLOAD" of "07/10/15," and "DATE RECODED: 08/10/15."  (*Id.* Ex. 5.)
Both dates are more than a month *before* Plaintiff allegedly "signed a joint venture agreement"
with Hestiun and NRG Co., "on September 21, 2015," thus initiating the investment structure
alleged in the FAC.  (*Id.* ¶ 12.)  The document also shows a "Reference No." of
"DEUT997856743216" and a "Transaction ID" of "090512DEUTDEFFXXX886479."  (*Id.*
Ex. 5.)[5]

   The FAC attaches a second SWIFT message as purported documentary evidence
of the €3 billion transaction, which introduces additional unexplained inconsistencies.  (FAC Ex.
6.)  Exhibit 6 appears to discuss a transaction between Hestiun Finance and NRG Co., albeit with
a different reference number, but it describes an "issue date" of "03 FEB 2016," (*id.*), which does
not match either date in Exhibit 5, July 10, 2015 or August 10, 2015.

   The alleged €3 billion transfer is also referenced in Exhibit 3, which is supposed
to be the "Business Asset agreement … between Hestiun and NRG."  (FAC ¶ 19.)  However, the
first page of that document identifies a €3 billion transaction in August 2015 "TO THE
'COMMON ACCOUNT' IN DEUTSCHE BANK AG IN FAVOR OF AND FOR FURTHER
BENEFIT OF WEHRHAHN GMBH."  (FAC Ex. 3 at 1.)  "Wehrhahn" is never again mentioned
in the Complaint or other documents.

---

[5] The initial Complaint attached a strikingly similar document (*see* Dkt. 1-1 at 28), as purported evidence for the €3 billion wire transfer.  That document also identified a €3 billion transaction, and had the exact same "Reference No." of "DEUT997856743216" and "Transaction ID" of "090512DEUTDEFFXXX886479."  (*Id.*)  However, the document attached to the initial Complaint identified "First Clearing, LLC" as beneficiary, and the "message text" stated that the transfer was in favor of "beneficiary Bank Wells Fargo Bank N.A. San Francisco … for further credit to Contained Media Group, LLC"—all entities that are not otherwise named in the Complaint or FAC.  (*Id.*)  Defendants noted these inconsistencies in their Motion to Dismiss (Dkt. 10 at 7-11), but the FAC does not explain why the two documents, with different beneficiaries and different dates, would share the same Reference No. and Transaction ID.  In an attempt to sweep this evidence of fabrication under the rug, the FAC asserts that "[i]n the original complaint Plaintiff's counsel erroneously attached an unrelated document."  (FAC ¶ 22.)

C.      **The Alleged €5 Billion Wire Transfer**

The FAC also claims that "on February 13, 2017 Plaintiff arranged another transaction from Deutsche Bank to Woori Bank's common account, this time an amount of €5 billion."  (FAC ¶ 33.)  This "transfer of funds was part of a larger business/asset transaction between Plaintiff and Maybrook Financial Group Ltd."  (*Id.* ¶ 32.)  Along with the first alleged wire transfer, these funds were allegedly diverted to Woori Bank's "own transit account," not sent to Plaintiff.  (*Id.* ¶ 64.)

The FAC cites Exhibits 9 and 12 as evidence of the alleged €5 billion wire transfer from Maybrook Financial Limited to Plaintiff.  (*Id.* ¶¶ 32, 38.)  Exhibit 9 uses the exact same Reference Number and Transaction ID as the alleged €3 billion transaction: "DEUT997856743216" and "090512DEUTDEFFXXX886479," respectively.  (FAC Ex. 9 at 13.)[6]  Exhibit 9 also purports to include a message signed by Deutsche Bank's Chief Financial Officer ("CFO"), Dr. Marcus Schenck, and Chief Risk Officer ("CRO"), Stuart Lewis, but is on Maybrook letterhead.  (*Id.*)

Exhibit 12 purports to be another letter from Deutsche Bank's CFO and CRO.  It is addressed to Woori Bank's CEO and states that Deutsche Bank's "records show that Woori Bank pulled the funds from the common account XXXXXX01KR on 8 March 2017, but did not place the funds into the AJ ENERGY account yet."  (FAC Ex. 12 at 1.)  In this alleged correspondence, Deutsche Bank demanded that Woori Bank "release the funds to AJ ENERGY LLC immediately to avoid legal action."  (*Id.*; *see id.* ¶ 38.)  The signatures of the CFO and CRO on that "letter" do not match the signatures on the message included with Exhibit 9.  (*Compare* FAC Ex. 9 at 13 *with* Ex. 12 at 1.)

---

[6] The FAC's pagination for exhibits is inconsistent.  For ease of reference, this page is found at Dkt. 19-2, p. 24.

### III. ARGUMENT

**A.      The FAC's Facially Implausible Allegations Fail To State A Claim**

Under Rule 8, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Determining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense," and may take into consideration "documents appended to the complaint or incorporated in the complaint by reference."  *In re Agria Corp. Sec. Litig.*, 672 F. Supp. 2d 520, 527 (S.D.N.Y. 2009) (ellipsis in original) (citations omitted).

Although well-pled allegations are taken as true when deciding a motion to dismiss, courts routinely and properly apply Rule 8 to dismiss claims that "are implausible in light of factual allegations *in the pleading itself*."  *Krys v. Pigott*, 749 F.3d 117, 133 (2d Cir. 2014) (emphasis added) (affirming dismissal of complaint without leave to amend).[7] Accordingly, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely."  *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).  Put simply, "[t]he *Iqbal* standard screens out the 'little green men' cases" by stopping suits based on patently implausible allegations before they leave the gate.  *Agria Corp.*, 672 F. Supp. 2d at 527 (citation omitted).

---

[7] *See also In re Old CarCo LLC*, No. 11 Civ. 5039(DLC), 2011 WL 5865193, at *15 (S.D.N.Y. Nov. 22, 2011) (dismissing claims where "it is implausible to see, on the face of the [complaint], any Consideration Gap"); *333 E. 60th St., Inc. v. N.Y. State Liquor Auth.*, No. 08 Civ. 4147(RJS), 2008 WL 4104012, at *5-6 (S.D.N.Y. Aug. 29, 2008) (dismissing "allegations" that "appear[ed] implausible on their face").

Plaintiff's claims here are implausible on their face in light of the allegations in the FAC and the documents attached to it.  Each and every cause of action depends upon the existence of the two alleged wire transfers totaling €8 billion into Woori Bank's "common account" at Deutsche Bank.  (*E.g.*, FAC ¶¶ 21, 33; *see also id.* ¶¶ 60, 71, 82, 100, 108, 115.)  But the allegations and the documents supporting those purported transactions are not plausible, and the Court can reach that conclusion by reviewing only the FAC and its attachments.  Without a plausible allegation that the transactions occurred, Plaintiff's claims fail.

*First*, the €3 billion transaction and the €5 billion transaction share the same Reference Number and Transaction ID, according to the documents attached to Plaintiff's pleading.  (*Compare* FAC Ex. 5 ("REFERENCE NO: DEUT997856743216" and "TRANSACTION ID: 090512DEUTDEFFXXX886479) *with* Ex. 9 at 13 ("Reference No.: DEUT997856743216" and "Transaction ID: 090512DEUTDEFFXXX886479").)  The same exact numbers also appeared on a document referencing yet another transaction that was attached to the initial Complaint (*see* Dkt. 1-1 at 28), which Plaintiff now calls an "unrelated document" that was "erroneously attached."  (FAC ¶ 22.)

This is implausible on its face.  According to the FAC, the €3 billion transaction was executed sometime in October 2015 (FAC ¶¶ 107-08), and the funds originated with Hestiun Finance for the ultimate benefit of NRG Co.  (*Id.* ¶ 21.)  In contrast, the €5 billion transaction was allegedly executed "[o]n February 13, 2017," (*id.* ¶ 42), from Maybrook for the ultimate benefit of Plaintiff itself.  (*Id.* ¶ 41.)  Plaintiff's claim that two transactions over a year apart involving completely different parties nevertheless share the same Reference Number and Transaction ID defies common sense and exceeds the limits of credulity (to say nothing of the "unrelated" document attached to the initial Complaint with the same numbers).

9

The initial Complaint suffered from this exact facial implausibility, as Defendants' original motion to dismiss showed, but Plaintiff's FAC says nothing at all to explain the recurring reference numbers.  The most reasonable inference is that neither transaction occurred, and that the numbers were invented.  Even stopping short of drawing that inference, the alleged transactions are rendered facially implausible by the matching numbers.

*Second*, the FAC and its exhibits list inconsistent dates, account numbers, and beneficiaries for the alleged €3 billion wire transfer.  Exhibit 5 lists a "DATE OF UPLOAD" of "07/10/15," and "DATE RECODED: 08/10/15."  (*Id.* Ex. 5.)  But both dates are more than a month *before* Plaintiff allegedly joined the joint venture that produced this transaction "on September 21, 2015."  (*Id.* ¶ 12.)  Exhibit 6 uses an "issue date" of "03 FEB 2016," (FAC Ex. 6 at 1), which does not match either of the dates in Exhibit 5.

Exhibit 6 also lists Hestiun's Deutsche Bank account number as "8XXXXXXX," whereas Exhibit 5 lists Hestiun's Deutsche Bank account number as "9XXXXXXX."  (*Compare* FAC Ex. 5 *with* Ex. 6.)  The account number that appears on Exhibit 5 is associated elsewhere in the documents with Maybrook Financial Group Limited, not Hestiun Finance.  (*See* FAC Ex. 9 at 3, 12; Ex. 12 at 1.)  This overlap in account numbers is never explained or reconciled.

Exhibit 3 is supposed to be the "Business Asset agreement … between Hestiun and NRG," (FAC ¶ 19), but the first page of that document identifies a €3 billion transaction in August 2015 "TO THE 'COMMON ACCOUNT' IN DEUTSCHE BANK AG IN FAVOR OF AND FOR FURTHER BENEFIT OF WEHRHAHN GMBH."  (FAC Ex. 3 at 1.)  The Complaint does not identify who "Wehrhahn" is supposed to be, or even attempt to explain why a contract attached to the FAC identifies this non-party as the beneficiary of the alleged €3 billion transfer.

10

If indeed the €3 billion transfer ever occurred, Plaintiff should be able to identify consistently and with little difficulty the date on which it happened, the account number from which it originated, and the beneficiary.  The fact that Plaintiff cannot do so—even after amending the Complaint—shows the allegation is implausible.

*Third*, the FAC asserts that the CFO and CRO of Deutsche Bank personally wrote a message on Maybrook's letterhead to confirm the €5 billion wire transfer.  (*See id.* Ex. 9 at 13.)  The FAC supplies no explanation for why bank executives would communicate under the banner of another company.  The FAC also attaches a second message purportedly from Deutsche Bank's CFO and CRO to Woori Bank's CEO demanding that €5 billion be deposited in Plaintiff's account "immediately to avoid legal action."  (*Id.* Ex. 12.)  That letter also implausibly states that "[o]ur records show that Woori Bank pulled the funds from the common account XXXXXX01KR on 8 March 2017, but did not place the funds into the AJ ENERGY account yet."  (*Id.* Ex. 12 at 1.)  According to the FAC, the AJ Energy account at issue was held at Woori Bank, not Deutsche Bank, (*id.* ¶ 41), making it implausible that Deutsche Bank's records would show whether Woori Bank deposited funds in that account.

*Fourth*, the documents attached to the FAC bear other indicia of implausibility that—taken together with the unexplainable inconsistencies identified above—further support dismissal.  For instance, the signatures on the two documents purportedly signed by the CFO and CRO of Deutsche Bank do not resemble each other.  (*Compare* FAC Ex. 9 at 13 *with* Ex. 12 at 1.)  In addition, the signature blocks below those signatures include a "PIN," a "SSN" (presumably, a Social Security Number), and a five-digit "ZIP code," despite a German address in the letterhead.  (*Id.* Ex. 12 at 1.)[8]  The documents reveal no apparent reason that anyone, much

---

[8] The "ZIP code," 03275, is associated with Allenstown, New Hampshire.

less a bank CFO, would include such information in a letter.[9]

A straightforward review confined to the four corners of the FAC and the documents attached to it reveals that this is one of those "'little green men' cases." *Agria Corp.*, 672 F. Supp. 2d at 527 (citation omitted). Rule 8's plausibility requirement is designed to stop such cases at the pleading stage. The FAC should be dismissed as implausible on its face. *See Krys*, 749 F.3d at 133.

## B.    Each Individual Cause Of Action Also Fails To State A Claim

Even if the Court were to accept the FAC's implausible allegations, each cause of action contains fatal pleading deficiencies that require dismissal.

### 1.    The Fraud Cause Of Action Fails

"The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009).[10] Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

"To satisfy the pleading standard for a misleading statement or omission under Rule 9(b), a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*,

---

[9] The FAC's other attachments raise more questions than they answer. Exhibit 9 includes what appears to be an email from Deutsche Bank's CFO to "Alexander@aj-energy.com" but which is addressed to an unidentified "Mr. Park" and "Mr. Lee." (FAC Ex. 9 at 14.) Exhibits 2, 3, and 11 are a series of incomprehensible contract documents naming inconsistent "providers," "receivers" and "beneficiaries" of multi-billion Euro deals, which include several scanned passport images appended for no apparent reason.

[10] The FAC's incoherent claims make it impossible to assess what law should ultimately apply to this diversity jurisdiction case. Defendants apply New York law here, *see, e.g.*, *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 2018 WL 485975, at *4 (S.D.N.Y. Jan. 17, 2018), but reserve the right to assert that foreign law applies in the future.

794 F.3d 297, 305 (2d Cir. 2015) (citations omitted).  When alleging fraud against a corporate

entity, the Complaint "must link the allegedly fraudulent statement to an individual speaker;

attribution to a corporate entity or its representative is insufficient."  *Greenspan v. Allstate Ins.*

*Co.*, 937 F. Supp. 288, 291 (S.D.N.Y. 1996).

   The FAC fails to allege *any* particular representation by either Defendant.  Nor is

there any allegation identifying the speaker, stating where or when the statements were made, or

explaining why any particular statement was fraudulent.  Instead, the FAC includes three

categories of general and conclusory fraud allegations, all of which fall short of Rule 9(b)'s

heightened pleading standard.

   In the first category, Plaintiff alleges that "Woori Bank's Officer[s]," who are

never identified, "lured Plaintiff into investing more money with the promise of the return of the

€3 billion."  (FAC ¶ 51; *see also id.* ¶ 27.)  These "Officers," joined by the "Minister of Finance

of South Korea," who is *not* alleged to be an officer of Woori Bank, allegedly "discussed in [sic]

exactly how the investment of €5 billion into South Korea would be beneficial to Plaintiff and to

the South Korean Economy.  (*Id.* ¶ 52.)  According to Plaintiff, "[t]he investment purpose of the

€5 billion was discussed in great detail and with specificity."  (*Id.*)

   These allegations do not satisfy Rule 9(b).  They do not identify what was

allegedly "discussed in great detail and with specificity" (*id.*), nor do they state where or when

these statements were purportedly made or how exactly they were false.[11]  Plaintiff's allegations

about Woori Bank's "Officers" also provide no information about the identity of the alleged

speakers, which Rule 9(b) absolutely requires.  (*Id.* ¶¶ 51, 53.)  Courts routinely reject such

---

[11] It is also unclear why Woori Bank would discuss with Plaintiff "how the investment of €5 billion into South Korea would be beneficial to Plaintiff."  (FAC ¶ 52.)  Such allegations are inconsistent with the overarching claim that Plaintiff's investments were pursuant to a "joint venture" that did not include Woori Bank at all.  (*Id.* ¶ 12.)

vague allegations, particularly when they are not attributed to an identified speaker. *See Greenspan*, 937 F. Supp. at 291; *accord Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'") (citation omitted).

In the second category, Plaintiff alleges that "[b]y law, once Woori Bank pulls funds from the common account they are required to place these funds into Plaintiff's account within 72 hours of withdrawal." (FAC ¶ 46.) Plaintiff then repeatedly asserts the conclusion that this purported legal obligation (the source of which is never identified), amounts to a representation that funds *would* be deposited in Plaintiff's account. (*Id.* ¶¶ 57, 61, 62.)

These allegations also fail to comply with Rule 9(b) because they too fail to identify a speaker, when they were made, where they were made, or who received them. Similarly, the reference to unspecified and unfounded "legal and fiduciary duties" does not reveal what was represented to Plaintiff, when, or by what means, much less how or why it was false. (FAC ¶ 61.)[12]

In the third category, the FAC asserts that Woori Bank fraudulently denied that it ever received the funds at issue in this case. (*Id.* ¶¶ 28, 48, 66.) These allegations also fail. As with the other categories, these assertions are conclusory, identify no speaker, and provide no time or place of the statements. Further, Woori Bank's alleged denial that it received funds would have necessarily occurred *after* Plaintiff made the transfers at issue. As a matter of logic and law, Plaintiff could not have relied on misrepresentations that occurred *after* Plaintiff

---

[12] Although unclear, the FAC also suggests that Woori Bank fraudulently breached "an interbank agreement detailing the responsibilities between Deutsche Bank and Woori Bank regarding server to server transactions." (FAC ¶ 59.) This allegation fails because "a cause of action for fraud does not arise when the only alleged fraud relates to a breach of contract." *Metro. Transp. Auth. v. Triumph Advert. Prods.*, 116 A.D.2d 526, 527 (1st Dep't 1986).

14

executed the transactions.  *See Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*,

257 F. Supp. 3d 348, 356, 359 (S.D.N.Y. 2017) (dismissing claims based on alleged

misrepresentations made after transaction was executed because the timing "preclude[ed] [the

plaintiff's] reliance on those statements"); *Taizhou Zhongneng Import & Export Co. v.

Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (holding that claims for negligent and

fraudulent misrepresentation must fail where the "only alleged misrepresentations made by

[defendant] occurred *after* [plaintiff] had already performed under the contract" because plaintiff

"could not have relied on any of [defendant's] representations").

In sum, the FAC asserts, at most, that unidentified Woori Bank "Officers" had

conversations with an unnamed person associated with Plaintiff about investments at some

unknown time and place, promised to comply with a vague and unsupported preexisting legal

obligation to deposit underspecified "Cash Funds" into Plaintiff's account at some other

unnamed time and place, or made false denials after the fact, which Plaintiff could not have

relied on as a matter of law.  The FAC falls far short of stating a claim for fraud.

### 2. The Negligent Misrepresentation Cause Of Action Fails

"A claim for negligent misrepresentation requires the plaintiff to demonstrate

(1) the existence of a special or privity-like relationship imposing a duty on the defendant to

impart correct information to the plaintiff; (2) that the information was incorrect; and (3)

reasonable reliance on the information"  *J.P. Morgan Sec. Inc. v. Ader*, 127 A.D.3d 506, 506 (1st

Dep't 2015).  Plaintiff must also satisfy Rule 9(b)'s heightened pleading standard for its

negligent misrepresentation claim.  *See PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 496

(S.D.N.Y. 2017) ("A claim for negligent misrepresentation 'must be pled in accordance with the

specificity criteria of Rule 9(b).'" (citation omitted)).

Plaintiff's negligent misrepresentation claim therefore fails for the same reason as

the fraud claim: the FAC fails to identify with particularity the content or circumstances of any alleged misrepresentation and alleges reliance on statements that post-date the transactions. The cause of action should be dismissed for this reason alone. *See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003) (dismissing negligent misrepresentation claim where plaintiff did not identify "the allegedly false representations ... who at [defendant] made them, where and when they were made, and why they are considered fraudulent").

Even if Plaintiff could identify a particular negligent misrepresentation, this claim would still fail. "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 578 (2011) (citation omitted). It is well-settled that the "relationship between a bank and its depositor is one of debtor and creditor," and that "an arm's-length borrower-lender relationship ... does not support a cause of action for negligent misrepresentation." *Id.* (ellipsis in original) (citations omitted); *see also JPMorgan Chase Bank, N.A. v. Freyberg*, 171 F. Supp. 3d 178, 184, 191 (S.D.N.Y. 2016) (bank-depositor relationship is "is not a fiduciary or special relationship"); *Dobroshi v. Bank of Am., N.A.*, 65 A.D.3d 882, 884 (1st Dep't 2009) (same).

### 3.   The Conversion Cause Of Action Fails

To state a claim for the conversation of money, there must be "a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 643 (E.D.N.Y. 2000) (quoting *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D. 2d 113, 124 (1st Dep't 1990)). "By its terms, this principle does not apply to the bank-depositor relationship, because funds

deposited with a bank do not constitute a specific and identifiable fund." *Id.*

This is because "any funds deposited by the creditor-depositor into an account with the debtor-bank become the bank's property," with a corresponding contractual obligation to pay the amount of the deposit. *Id.*; *see also Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 560 (2d Cir. 1976) ("Money deposited in a general account at a bank does not remain the property of the depositor.").  "It follows that the plaintiff cannot allege that [the defendant] took or retained 'specific and identifiable property' belonging to him, and it also follows that a conversion claim cannot be stated." *Tevdorachvili*, 103 F. Supp. 2d at 643; *see also Acevado v. Citibank, N.A.*, No. 10 Civ. 8030 (PGG), 2012 WL 996902, at *12 (S.D.N.Y. Mar. 23, 2012) (dismissing depositors' conversion claim where funds deposited by plaintiffs into a general bank account "became an asset of the bank" and were "not sufficiently identifiable"); *Wexselblatt v. Bank of Boston Int'l*, 666 F. Supp. 513, 517 (S.D.N.Y. 1987) (dismissing cause of action for conversion by account holder who could not allege that bank took "specific and identifiable property" belonging to plaintiff and who was in substance seeking damages for breach of contract) (citation omitted).

Plaintiff's conversion claim fails under this well-settled law.  Both wire transfers that Woori Bank allegedly converted were first deposited, according to the FAC, in Woori Bank's account at Deutsche Bank and then put into a "transit account" at Woori Bank.  (FAC ¶¶ 17, 21, 24, 40, 64.)  Upon these alleged deposits, the funds became either Deutsche Bank's property (as the depositary bank of the "common account") or Woori Bank's property (as the depositary bank for the "transit account").  "It follows that the plaintiff cannot allege that [Woori Bank] took or retained 'specific and identifiable property' belonging to [Plaintiff], and it also follows that a conversion claim cannot be stated." *Tevdorachvili*, 103 F. Supp. 2d at 643.

Moreover, Plaintiff has not plausibly alleged that Woori Bank was obligated to "treat in a particular manner the specific fund in question." *Id.* In this regard, it bears considerable emphasis that Plaintiff's description of how the "common account" operated in the alleged transactions in terms of Woori Bank's purported obligations is complete nonsense:

> It is unrealistic to exchange domestic currencies with the currencies requested by the customer/provider, so instead of subtracting the money from the local bank, the corresponding amount is transferred to the customer's account in their bank. This means that said funds sender's account are transferred to the internal account of the domestic customer's bank, i.e. the customer or the supplier is withdrawn from the local bank's account of the buyer who is affiliated with the bank in the country of the sender bank's foreign exchange settlement partner bank.

(FAC ¶ 17.) This is the incomprehensible arrangement upon which Plaintiff alleges that Woori Bank "was legally obligated to transfer the funds into Plaintiff's account within 72 hours after pulling the funds" from the common account" (*id.* ¶ 58), and Plaintiff's common account theory therefore fails to state a plausible conversion claim.

Plaintiff's conversion claim with respect to the alleged €3 billion transaction also fails for the separate reason that Plaintiff has failed to demonstrate its "possessory right or interest in the property" at issue. *Niceforo v. UBS Global Asset Mgmt. Ams., Inc.*, 20 F. Supp. 3d 428, 433 (S.D.N.Y. 2014) (citation omitted). Plaintiff does not plead any facts establishing that it had any right to possession of the €3 billion transfer. Instead, Plaintiff alleges that "Hestiun agreed to transfer €3 Billion to the common account which was then transferred to NRG's Account Number . . . with NRG *to be credited to NRG's account* at Woori Bank." (FAC ¶ 21 (emphasis added).) Those funds, if they existed, would belong to non-party NRG, not Plaintiff.

### 4.    The Unjust Enrichment Cause Of Action Fails

To state a cause of action for unjust enrichment, "[a] plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Mandarin*

*Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (second alteration in original) (citation

omitted).  However, under New York law, "[i]f the plaintiff is simply restating a contract or tort

claim, then unjust enrichment is not available."  *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555,

567 (S.D.N.Y. 2016).  In other words, a cause of action for unjust enrichment is not permitted

where the plaintiff "is alleging tort causes of action and is relying on the same set of facts for

these causes of action as he is for the unjust enrichment claim."  *Id.* at 568 (dismissing unjust

enrichment claim as duplicative); *see also Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790

(2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a

conventional contract or tort claim.").

        Plaintiff's unjust enrichment cause of action merely duplicates the other tort and

contract claims asserted in the FAC.  Plaintiff pleads no facts unique to the unjust enrichment

cause of action.  Rather, the claim is based solely on the two alleged wire transfers, just like all

the other claims.  (*See* FAC ¶¶ 99-105.)  The unjust enrichment claim should therefore be

dismissed as duplicative.  *See Buonasera*, 208 F. Supp. 3d at 567-68.

     **5.**    **The Breach Of Contract Causes Of Action Fail**

        "Under New York law, the elements of a cause of action for breach of contract are

(1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the

other party, and (4) damages suffered as a result of the breach."  *Beautiful Jewellers Private Ltd.*

*v. Tiffany & Co.*, 438 Fed. App'x 20, 21-22 (2d Cir. 2011).  "A complaint 'fails to sufficiently

plead the existence of a contract' if it does not provide 'factual allegations regarding, *inter alia*,

the formation of the contract, the date it took place, and the contract's major terms.'"  *Childers v.*

*N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014); *see also Valley Lane*

*Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 Fed. App'x 102, 104 (2d Cir.

2012) (same).  "In order to survive dismissal, the complaint must provide specific allegations as

to the contract's parties, terms, and breached provisions." *Steiner v. Anbrook Indus., Ltd.*, No. 17-cv-5187 (KBF), 2018 WL 1664978, at *4 (S.D.N.Y. Apr. 4, 2018).

Plaintiff has failed to allege any specific facts about the alleged contracts upon which the two breach of contract causes of action are premised.  In its Fifth Cause of Action, Plaintiff merely alleges that "Woori Bank promised [Plaintiff] that, if it invested €3 Billion in South Korean These [sic] funds were to be used to purchase precious commodities and government securities."  (FAC ¶ 107.)  Plaintiff alleges that this agreement took place "[i]n or about September or October 2015."  (*Id.*)

Similarly, for its Sixth Cause of Action, Plaintiff alleges that "[o]n or around September 2016," it entered an agreement with Woori Bank wherein "Plaintiff's €3 Billion would be returned to its rightful owner if [Plaintiff] agreed to a €5 Billion investment" and "Woori Bank had promised to invest the funds into . . . specific investments."  (*Id.* ¶¶ 113-14.)  Beyond these vague allegations for the two causes of action, Plaintiff provides no other information about the alleged contracts, much less the particular dates of the contact, the specific terms of the contracts, or whether the contracts were oral or in writing as required.  Thus, Plaintiff has failed to meet the minimal pleading requirements of Rule 8.

## C.     The FAC States No Cause Of Action Against Woori America

When, as here, the pleadings and documents attached to the pleadings fully negate any theory of liability against a party named in the FAC, dismissal of that party is appropriate under Rule 12(b)(6).  *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[P]laintiff can plead himself out of court by alleging facts which show that he has no claim[.]") (quoting *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997)); *see also Livent, Inc.*, 151 F. Supp. 2d at 405-06.

After stating that Woori America is "a corporation under the laws of the State of

New York, with its principal place of business in the County of New York, State of New York," and "is a wholly owned subsidiary" of Woori Bank in Paragraphs Two and Three of the FAC, Plaintiff does not mention Woori America again in the remaining 114 paragraphs of the FAC.

Furthermore, the FAC concedes that Plaintiff's Woori Bank account was in Korea, and therefore could not have been with Woori America, in New York.  (*See* FAC ¶ 30 (referring to "AJ Energy's *offshore* account at Woori Bank" (emphasis added)).)  Plaintiff similarly claims that the "provisions under the joint venture agreement" signed by Plaintiff, NRG, and Hestiun "state that the agreement is between three experienced entities who have a desire to make and manage investments in the Republic of Korea," strongly suggesting that the New York entity would not have been involved.  (*Id.* ¶ 14; *see also id.* ¶ 27 (referring to Plaintiff's continued investment in the "South Korean Economy").)  The FAC also repeatedly asserts that the alleged "theft of Plaintiff's funds" was instigated by "[t]he CEO of Woori Bank, Lee Kwang-goo," who is *not* alleged to be the CEO of both Defendants.  (*Id.* ¶¶ 27, 35, 37, 90, 91.)  Because Plaintiff alleges no act or omission by Woori America, any claims that survive this Motion should be dismissed as against Woori America.

**D.     In The Alternative, The FAC Should Be Dismissed Under The Doctrine Of Forum Non Conveniens**

"[F]ederal courts have the power to dismiss damages actions under the common-law forum non conveniens doctrine ... in 'cases where the alternative forum is abroad.'"  *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 302 (S.D.N.Y. 2012) (alterations in original) (citation omitted).  Because the FAC does not and cannot state a claim against Woori America, the appropriate alternative forum for this case is abroad.

Courts apply a three-step analysis to forum non conveniens dismissals:

The first step in a *forum non conveniens* analysis is for the court to establish the existence of an adequate alternative forum.  Second, the court must determine the

level of deference to accord the plaintiff's choice of forum.  Third, the court must weigh the public and private interests in order to determine which forum will be most convenient and will best serve the ends of justice.

*LaSala v. Lloyds TSB Bank, PLC*, 514 F. Supp. 2d 447, 454-55 (S.D.N.Y. 2007) (quoting *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005)).

Under the first step, "[a]n alternative forum is adequate 'if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.'  The test does not mean that the same degree of relief must be available in the alternative forum."  *Id.* at 455 (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003)).  Here, Woori Bank, a Korean corporation, is amenable to litigation in South Korea, and courts have found that South Korea is a suitable forum.  *See, e.g.*, *Honshu Shipping Co. v. M/V Trade Sale*, No. C 04-1481 VRW, 2005 WL 3676097, at *2 (N.D. Cal. Apr. 28, 2005); *Hanwha Life Ins. v. UBS AG*, 127 A.D.3d 618, 619 (1st Dep't 2015).

The second step addresses "the amount of deference to be given plaintiff['s] choice of forum."  *La Sala*, 514 F. Supp. 2d at 456.  "In cases with foreign defendants, the home forum for the plaintiff is any federal district in the United States, not the particular district in which the plaintiff lives."  *Id.*  Thus, the Court should "consider the deference that should be given plaintiffs' choice to sue in the United States (not New York specifically) as opposed to" Korea.  *Id.*

In the Second Circuit, the "degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations."  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc).  These factors include "the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice," and "convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district."  *Id.* at 72.   Here, the lawsuit has no connection to

the chosen forum.  With Woori America properly dismissed, all the alleged transactions occurred between and among citizens of Nevada, Germany, the United Kingdom, and Korea, such that witnesses and evidence will be abroad, not in New York.  (*See* FAC ¶¶ 1, 4, 12, 31, 37.)  Although Plaintiff alleges the bare conclusion that "several witnesses are expected to be situated in New York," (*id.* ¶ 9), there are no facts alleged to support that assertion.

Moreover, "in the Second Circuit, deference *is* diminished when 'plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts.'"  *LaSala*, 514 F. Supp. at 456 (collecting cases) (quoting *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000)); *see also id.* ("Courts in this Circuit have numerous times dismissed suits by an American citizen or entity in favor of a foreign jurisdiction.").  Here, Plaintiff allegedly deals in "investments …in government approved projects and initiatives and investments in financial institutions and the South Korean Shipping Industry," such that it can fairly expect to litigate in Korean courts.  (FAC ¶ 56.)

The final step is to weigh the private and public interests.  In considering the private interests, "[w]here alleged misconduct is centered in the foreign forum and the majority of evidence resides there, dismissal is favored."  *LaSala*, 514 F. Supp. 2d at 458.  Again, all the alleged conduct occurred (if anywhere) in the United Kingdom and Korea.  It follows that witnesses and evidence will be overseas as well.

The public interest factors "include judicial economy, the interest in having 'localized controversies decided at home,' and the interest in having issues of foreign law decided by a foreign tribunal."  *Id.* at 461 (citation omitted).  In this regard, "there is little sense to allowing a U.S. citizen to haul a group of foreign defendants into a U.S. court on transactions having little or nothing to do with this country where there is an available foreign forum

significantly better suited to handling the litigation in a prompt, efficient and effective manner."

*First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001).  Plaintiff's FAC

identifies no localized controversy—it is an attempt to haul a foreign bank into a U.S. court on

two alleged wire transfers that have nothing to do with this country.  Thus, the Court should

dismiss this case under the doctrine of forum non conveniens.

## IV. CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

Respectfully submitted,

Dated:  June 7, 2018
     New York, New York

/s/    *Jonathan L. Frank*
Jonathan L. Frank
Jeffrey Geier
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
4 Times Square
New York, NY 10036
Tel: (212) 735-3000
Fax: (212) 735-2000
Email:    Jonathan.Frank@skadden.com
          Jeffrey.Geier@skadden.com

*Counsel for Woori Bank and Woori America Bank*