UNTITED STATES DISTRICT COURT
SOUTHERN DISTRICT IN NEW YORK

| | |
|---|---|
| AJ Energy LLC,            ) | Case No. 18-cv-03735 (JMF) |
| ) | |
| ) | |
| Plaintiff,     ) | **ORAL ARGUMENT** |
| v.                        ) | **REQUESTED** |
| ) | |
| WOORI AMERICA BANK, WOORI BANK and  ) | |
| ) | |
| Does 1 through 1-50, inclusive      ) | |
| ) | |
| Defendants  ) | |
| ) | |

# OPPOSITION TO DEFENDANT'S
# MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

THE LAW OFFICE OF RUTH CAM
RUTH CAM, ESQ. ATTORNEY AT LAW
2030 E. 4th Street, Suite 218A
Santa Ana, CA 92705
Tel: 714-488-9934
Fax: 844-272-6631

*Counsel for AJ Energy, LLC*

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ....................................................................................1

II. ARGUMENT WITH POINTS AND AUTHORITY .................................................3

    1.    The Intentional Misrepresentation Cause Of Action ..............................................4
    2.    The Negligent Misrepresentation Cause Of Action ................................................5
    3.    The Conversion Cause Of Action. ........................................................................6
    4.    The Breach Of Contract Causes Of Action ............................................................8
    5.    Failure To State A Cause Of Action .......................................................................8
    6.    Forum Non Conveniens ..........................................................................................9

        1.    The degree of Deference Accorded to Plaintiff's choice of Forum……..9
        2.    The Assessment of Conveniences…………………………………….…..10
        3.    Weighing Private and Public Interest………………………………….11

III. CONCLUSION.   …………………………………………………………………....12

IV. AFFIDAVIT BY ALEXANDER BOBARYKIN……………………………….....13-24

## TABLE OF AUTHORITIES      Page(s)

**CASES**

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
   17 N.Y.3d 565, 578 (2011) ...................................................................................................6,8

*Guidi v. Inter-Continental Hotels Corp.*,
   224 F.3d 142, 147 (2d Cir. 2000)............................................................................................12

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501, 508, 567 S.CT. 839, 91 L.Ed. 1055 (1947) ......................................................10

*Iragorri v. United Technologies Corp.*,
   274 F.3d 65, 71, 75 (2d Cir. 2001).....................................................................................10,11

*J.P. Morgan Securities Inc. v. Ader*,
   127 A.D.3d 506 (1st Dep't 2015) ..............................................................................................5

*Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd.*,
   257 F. Supp. 3d 348, 356, 359 (S.D.N.Y. 2017).......................................................................5

*LaSala v. Lloyds TSB Bank, PLC*,
   514 F. Supp. 2d 447, 454-56 (S.D.N.Y. 2007).....................................................................9,12

*Mfrs. Hanover Tr. Co. v. Chem Bank*,
   160 A.D. 2d 113, 124 (1st Dep't 1990).....................................................................................6

*Niceforo v. UBS Global Asset Management Americas, Inc.*,
   20 F. Supp. 3d 428, 433 (S.D.N.Y. 2014).................................................................................7

*In re Optimal U.S. Litigation*,
   886 F. Supp. 2d 298, 302 (S.D.N.Y. 2012)...............................................................................9

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64, 75 (2d Cir. 2003)..................................................................................................9

*Taizhou Zhongneng Import & Export Co. v. Koutsobinas*,
   509 F. App'x 54, 57 (2d Cir. 2013) ...........................................................................................5

*Tevdorachvili v. Chase Manhattan Bank*,
   103 F. Supp. 2d 632, 643 (E.D.N.Y. 2000) ..............................................................................6

*USHA (India), Ltd. v. Honeywell International, Inc.*,
   421 F.3d 129, 134 (2d Cir. 2005)..............................................................................................9

## RULES

Fed. R. Civ. P. 8..................................................................................................................3

Fed. R. Civ. P. 8(a)..............................................................................................................3

Fed. R. Civ. P. 9(b) ........................................................................................................... 4,5

Plaintiff AJ Energy, LLC (hereinafter AJ Energy) respectfully submits this Opposition to Woori Bank and Woori America Banks' Motion to Dismiss.

## I. PRELIMINARY STATEMENT

Plaintiff AJ Energy in its complaint prays for relief in a matter of Bank Fraud, in that Woori Bank stole a total of €8 Billion from AJ Energy and its partners during two separate transactions. The first one in 2015 was for €3 Billion and the second one in 2017 for was for €5 Billion. Why Defendant is even questioning the plausibility of the transactions is not clear. Plaintiff has provided several exhibits in support of the Wire Transfers, which consists of all documents that Plaintiff can obtain at this time, prior to starting the discovery process. While €8 Billion is a substantial amount of money, this fact should not call into question the veracity of the transactions. Defendant Woori bank simply denying the facts stated in the complaint is neither surprising nor relevant when considering the plausibility of the complaint.

Well-plead allegations are taken as true when this honorable Court considers a Motion to Dismiss. Plaintiff has attached all Exhibits it has in its possession when it filed its FAC and has included those Exhibits for the Court's review. In a multi-trillion industry like the banking industry, investments of €8 Billion are not as uncommon as Defendants are trying to make the Court believe. Plaintiff has explained in detail how the transactions occurred and how Woori Bank never transferred the funds into Plaintiff's account within 72 hours as required by banking regulations. See line by line explanation in Plaintiff's Affidavit attached herein.

Further Plaintiff has dismissed Woori America Bank, as it found no evidence that Woori America Bank took part in the fraud. Defendant conveniently left out the fact that its affidavit denying the existence of the transactions, was provided by Deutsche Bank New York, a subsidiary

of Deutsche Bank, AG in Frankfurt Germany. As a subsidiary, Deutsche Bank, New York was neither part of the transactions nor would it have any knowledge of these transactions. Defendants counsel was also an attorney representing Deutsche Bank New York and would not have had a problem convincing this non-party to write an affidavit on Defendant's counsel's behalf. Plaintiff will show during discovery that Deutsche Bank New York did not only have no knowledge of the transactions, it also went against Deutsche Bank Regulations, stating that a non-party subsidiary has no authority to sign an affidavit on behalf of Deutsche Bank AG, Frankfurt.

Defendant can claim that the allegations are fabricated, but it has obviously 8 billion reasons to do so. Anything Defendants allege and request this court to disregard, are actually issues to be resolved during discovery as for example its allegation that the affidavits Plaintiff added to its FAC are fraudulent. If Defendant doesn't believe the signatures are authentic, then it needs to address the matter during discovery. Defendant cannot just claim that they are fraudulent without substantiating evidence and without allowing Plaintiff the opportunity to prove their authenticity. Plaintiff, during discovery, will also prove that Deutsche Bank New York provided an invalid affidavit.

Further, Defendant claims that the funds were transferred before the business asset agreement was made regarding the €3 Billion transfer. Defendant here is grasping at straws. Defendant and its counsel are, or at least should be, aware that in Western Europe, including Germany, a date is written, with the day first, followed by the month and then followed by the year. The Business Asset Agreement was made on **August 5, 2015,** written as **5 August 2015** or **05/08/2015** in the European Document. The joint venture agreement regarding the €3 Billion transfer was made on **September 21, 2015**. The transaction took place on **October 7, 2015**. Defendant apparently read the date as **7/10/2015** on the German Document and tries to claim the

2

date reflects **July 10, 2015**. By Defendant's logic the second transaction would then have taken place on **13/02/2017.** As there are obviously only 12 months in a year, the date the transaction took place **on 02/13/2017** in American date format. Defendant was clearly aware as it never questioned the dates of the contracts and transaction date in the €5 Billion transfer report. Of course, by switching the dates around, Defendant can conveniently claim the pleading is internally inconsistent.

## II. ARGUMENT WITH POINTS AND AUTHORITY

Plaintiff's allegations are neither facially implausible, nor fail to state a claim. Under Federal Rule of Procedure 8(a) Defendant's correctly state that a complaint must contain the following:

*8. (a)*

*(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;*

*(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and*

*(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.*

Plaintiffs have met each and every element enumerated above:

(1) The complaint states a short and plain statement of the grounds for jurisdiction. *See FAC page 2 paragraph 8.*

(2) Further the FAC alleges correctly that Deutsche Bank AG, transferred a total of €8 Billion during two separate transactions into Woori Bank's Common Account with Deutsche Bank AG in Frankfurt, Germany, which were then supposed to be transferred into Plaintiff's account with Woori Bank. The Exhibits to the complaint show in detail, when and how those transactions were

made including account numbers, time of transactions and server address.

(3) A demand for relief was requested by Plaintiff for each and every cause of action.

## 1. The Intentional Misrepresentation Cause Of Action.

Defendant also claims Plaintiff's fraud and misrepresentation allegations are not plead in compliance with Rule 9(b).

**Rule 9(b) states:**

*"Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake.* ***Malice intent knowledge and, and other conditions of a person's mind may be alleged generally.***"

Here, Defendant alleges that Plaintiff never identified any particular misrepresentation, who it was made to, when it was made or who made it. Defendant is misleading the Court. The FAC on page 6 through 8, line 50 through 66 explains these elements in great detail.

The material misrepresentations were made by Officers of Woori Bank and Choi Sang Mok, the South Korean Minister of Finance. The connections between Choi Sang Mok and Woori Bank are a matter of discovery. The individual names of the Defendant's Officers will be discoverable. The particular misrepresentations are spelled out in great detail. Plaintiff was promised that his original €3 Billion investment would be returned to him if he invested another €5 Billion into specific government bonds, securities and investments in government approved projects, investments in financial institutions and specifically the South Korean shipping industry. Then CEO of Woori Bank, Lee Kwan-goo, is identified as the instigator of the theft and further Yoon Soo Park is identified as one of Woori Banks Officers as part of the transaction in Exhibit 9. Plaintiff is confident that during discovery more Officers at Woori Bank in Korea will be identified. Plaintiff also specifically states that the funds were

never transferred into Plaintiff's account, which logically leads to a conclusion that the representations as to the specific investments planned for Plaintiff's money, were false. Defendant here cites *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 356, 359 (S.D.N.Y. 2017) (dismissing claims based on alleged misrepresentations made after transaction was executed because the timing "preclude[ed] [the plaintiff's] reliance on those statements"); *Taizhou Zhongneng Import & Export Co. v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (holding that claims for negligent and fraudulent misrepresentation must fail where the "only alleged misrepresentations made by [defendant] occurred *after* [plaintiff] had already performed under the contract" because plaintiff "could not have relied on any of [defendant's] representations"). Plaintiff has already explained that in Europe a date starts with the day, followed by the month and the year. Defendants misleadingly ignored this fact and created confusion as to the dates of the misrepresentation and the transaction. Nowhere in the complaint or its exhibits does it state that any misrepresentations were made "after" Plaintiff performed, therefore neither case cited above applies.

### 2. The Negligent Misrepresentation Cause Of Action

As stated in the arguments regarding the intentional misrepresentation cause of action, Plaintiff again, states with specificity how representations were made to Plaintiff at Woori Bank in Korea and the details in the complaint and the cause of action does comply with Rule 9(b).  In a claim for negligent misrepresentation, it requires: (1) a special privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information" *J.P. Morgan Sec. Inc. v. Ader*, 127 A.D.3d 506, (1st Dep't 2015). Further, "[L]iability for

5

negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 578 (2011) (citation omitted).

### 3. The Conversion Cause Of Action

It is true that in order to state a claim for the conversion of money, there must be "a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 643 (E.D.N.Y. 2000) (quoting *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D. 2d 113, 124 (1st Dep't 1990)). However, it fails in its application to AJ Energy's funds. The €3 Billion transaction arose out of a specific joint venture between Hestiun Finance, NRG and AJ Energy and was specifically deposited in Woori Bank's common account to be invested for a specific, clearly outlined purpose in Korea. Wehrman GmbH is a subsidiary of Deutsche Bank, AG who deposited the funds into Woori Banks common account on behalf of AJ Energy but has no further involvement in the matter. A common account is established to make it simpler for governmental or large sum investors to transfer funds between countries without changing the currency. As Defendants found the definition of a common account difficult to understand, Plaintiff offers a shorter definition as follows:

**A Common or Correspondent Account** is an account established by a banking institution to receive deposits from, make payments on behalf of, or handle other financial transactions for another financial institution. Correspondent accounts are established through bilateral agreements between the two banks.

Commonly, correspondent accounts are the accounts of foreign banks that require the ability to pay and receive the domestic currency. The accounts allow them to pay others from the account or receive money from others into the account. This allows the bank to offer various services to their customers such as foreign exchange and foreign currency denominated loans and deposits, despite their not having a bank license for the foreign country in that country's currency.

Once the €3 Billion were identified by Woori Bank and pulled out of the common account, the conversion occurred. Woori Bank, under international banking regulations, has 72 hours to transfer the funds into the account as intended by Plaintiff. The €3 Billion were legally in possession of Woori Bank and part of its assets during these 72 hours. However, after Woori Bank failed to deposit the €3 Billion into NRG's account with Woori Bank in Korea, where it supposed to be transferred for very specific investments, the €3 Billion were no longer an amount not identifiable from other funds in Woori Banks common account. Woori Bank neglected to deposit the money to be used for very specific investments, but converted the funds depriving NRG of its right to possession and ownership, not only of the €3 Billion but also of the specific, clearly identifiable investments. Defendants claim that Plaintiff has not clearly identified the specific investment. However, during discovery Plaintiffs will be able to subpoena and produce letters of intent that clearly specify how the specific fund of the joint venture was to be invested.

Defendants further claim that AJ Energy has failed to demonstrate its possessory right or interest in the property, citing *Niceforo v. UBS Global Asset Mgmt. Ams., Inc.*, 20 F. Supp. 3d 428, 433 (S.D.N.Y. 2014) (citation omitted). Plaintiff clearly plead its right to possession by describing the Joint Venture Agreement between itself, Hestiun Finance, Limited, and NRG, Co Limited. AJ Energy CEO Alexander Bobarykin is clearly described as Co-Manager and Arranger aside from being a Partner in the Joint Venture Agreement, attached in Exhibit 2.

### 4. The Breach Of Contract Causes Of Action

According to Defendants own argument citing *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 578 (2011) (citation omitted), it is well-settled that the "relationship between a bank and its depositor is one of debtor and creditor," and that "an arm's-length borrower-lender relationship is created. A relationship between a debtor and creditor is clearly a contractual relationship. Here, Defendants deposited the funds into Woori Bank's common account as a depositor. Defendant became a creditor of Woori Bank. Woori Bank breached the contract by withdrawing the funds and moving them out of Plaintiff's reach. Therefore, Woori Bank breached its contract with AJ Energy by not crediting AJ Energy's Account with Woori Bank. As a result of Woori Banks' Breach, AJ Energy was not credited the funds owed and was not able to make its specifically planned investments. Plaintiff was therefore damaged in the amount of €3 Billion. Defendants cannot have it both ways by first arguing that the relationship between bank and customer is one of debtor and creditor, which is contractual to attack a negligent misrepresentation cause of action, and then later claim such a relationship did not exist between Woori Bank and its customer AJ Energy.

Plaintiff did not fail to allege specific facts about the breach of contract cause of action. Its whole complaint is a detailed description as to how Woori Bank, as Debtor, owes AJ Energy €8 Billion and instead of fulfilling its side of the contractual relationship, kept AJ Energy's funds for itself.

### 5. Failure To State A Cause Of Action

Plaintiff does not allege any cause of action against Woori America Bank. As of yet, Plaintiff does not have evidence showing Woori America Bank was part of the scheme to defraud and/or injure Plaintiff. AJ Energy has therefore dismissed Woori America Bank as a Defendant

without prejudice.

### 6. Forum Non Conveniens

"[F]ederal courts have the power to dismiss damages actions under the common- law forum non conveniens doctrine ... in 'cases where the alternative forum is abroad.'" *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 302 (S.D.N.Y. 2012) (alterations in original) (citation omitted).

> Courts apply a three-step analysis to forum non conveniens dismissals:
> The first step in a *forum non conveniens* analysis is for the court to establish the existence of an adequate alternative forum. Second, the court must determine the level of deference to accord the plaintiff's choice of forum. Third, the court must weigh the public and private interests in order to determine which forum will be most convenient and will best serve the ends of justice.

*LaSala v. Lloyds TSB Bank, PLC*, 514 F. Supp. 2d 447, 454-55 (S.D.N.Y. 2007) (quoting *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005)).

**Step One:** The degree of deference accorded to Plaintiff's choice of forum to support its argument regarding step one above, Defendant cites to and quotes from *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003)), stating "the test does not mean that the same degree of relief must be available in the alternative forum." Here, Plaintiff AJ Energy is an American Limited Liability Company formed under the Laws of the State of Nevada. Further, Alexander Bobarykin, the CEO of AJ Energy is an American Citizen who lives in California, County of Orange. Woori Bank is a South Korean Corporation with foreign branches and/or subsidiaries in a wide range of countries throughout the globe, including America.

Surely, then, a lawsuit filed by AJ Energy, LLC would not be an adequate forum for a lawsuit in South Korea and should not be considered as an alternative forum. However, this

forum is argued to be adequate by Defendants, as it would surely prejudice Plaintiff. Generally, a Plaintiff's choice of forum in which to bring suit is entitled to substantial deference, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Here, Defendant's did not meet their burden to reasonably convince the court that the Plaintiff's choice of forum should be disturbed.

*Iragorri v.United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) the Second Circuit Court states that the "degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." These factors are *Id*. at 72 "the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice," and "convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district."

**Step Two:** The Assessment of Conveniences

Plaintiff is a Citizen of Nevada, its CEO a Citizen of California. He does not speak Korean. Defendants allege that, as a Corporation doing international business, it can expect to litigate in foreign courts. AJ Energy however has never done business before in the Republic of Korea, also, AJ Energy is not a corporation. The investment of €3 Billion was its first. Plaintiff did not expect that its first investment into South Korea would lead to a law suit. Further Defendant Woori Bank has an American branch in New York. Plaintiff chose New York as its forum as several key witnesses are located in New York or it is more convenient for most of Plaintiff's witnesses to travel to New York then South Korea. With the majority of Plaintiff's witnesses not speaking Korean. Several witnesses are located in New York, as for example employees of Deutsche Bank, New York, which connected itself as a third-party witness by

giving an affidavit that claims facts about the case that cannot and are not within its knowledge. Several key witnesses are located in Frankfurt, Germany. A flight to New York is direct and relatively short compared to a flight to South Korea. AJ Energy's German witnesses speak German and English, but not Korean. Further AJ Energy is expecting several officials of the US government to testify on its behalf. As these witnesses and their evidence are mostly located in Washington DC, it would vital for these witnesses to appear in court in New York instead of South Korea. Further these witnesses do not speak Korean either. Litigating the case in South Korea would be very expensive for both willing and unwilling witnesses including travel cost and time spend during flights. Finding an attorney in South Korea who speaks fluent English would be another hardship for Plaintiff. Woori Bank has Officers located in New York. Once again, Defendant wants to have it both ways. By denying the transactions did take place, it cannot now say that Korea would be a more convenient forum for gathering evidence and question witnesses. If no transactions took place in South Korea, no evidence or witnesses would be in South Korea either. *Iragorri v. United Techs. Corp.,* 274 F. 3d 75 states that a defendant does not carry the day simply by showing an adequate alternative forum. The action should only be dismissed if the forum chosen by Plaintiff is shown to be genuinely inconvenient. Here Woori Bank cannot claim genuine inconvenience as it has a location right here in New York.

    **Step Three:** Weighing Private and Public Interest.

    A. Private Interest: The matter started out as a transaction at Woori Banks common account at Deutsch Bank AG, located in Frankfurt Germany. Travel from Frankfurt to New York is more cost effective and as these German Witnesses speak both German and English would be much easier. Any documents in Korean will have to be translated into English whether the forum is New York or South Korea. US government officials can easily, and cost effectively

appear in New York as most are based in Washington DC. Additional evidence is located in Washington DC. Even as Defendant denies any evidence of the alleged transaction exists, as they, according to this motion to dismiss did not occur, it makes no sense for Defendant to claim that any evidence would be located in South Korea. Defendant may be a foreign bank, but it also is a corporation doing business abroad and can expect to litigate in foreign courts. *LaSala v. Lloyds TSB Bank PLC*, 514 F. Supp. at 456 (collecting cases) (quoting *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000). The court specifically has its long arm statutes to stop foreign corporations doing business in America from being immune to judicial intervention in the event of breach and legal violations, in order to protect American companies like Plaintiff, and the American public as a whole.

### III. CONCLUSION

Based on the reasoning above and the Affidavit by Defendant's CEO and Managing Partner, Defendants Motion to Dismiss with Prejudice should not be granted and if this Honorable Court so decides the dismissal of one or two causes of action, should not lead to a dismissal of the case. In the alternative, should the Court find for Defendants, Plaintiff is respectfully requesting leave to amend as more evidence supporting Plaintiff's case is being uncovered.

Dated: June21, 2018  
Santa Ana, California

Respectfully submitted,

The Law Office of Ruth Cam

_____

Ruth Cam, Esq.  
2030 E 4th Street, Suite 218A  
Santa Ana, CA 92705

Tel: 714-488-9934  
Fax: 844-272-6631  
*Counsel for AJ Energy, LLC*