UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                    :
AJ ENERGY LLC,                                      :
                                                    :
                              Plaintiff,            :          18-CV-3735 (JMF)
                                                    :
              -v-                                   :          AMENDED
                                                    :          OPINION AND ORDER
WOORI BANK et al.,                                  :
                                                    :
                              Defendants.           :
                                                    :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        This lawsuit — brought by AJ Energy LLC, a small limited liability company based in

Nevada, against Woori Bank, a South Korean bank — centers on an extraordinary claim: that

Woori Bank stole *eight billion euros*.  According to AJ Energy, three billion euros intended for

its account were transferred to Woori Bank in 2015 only to disappear completely and, despite

that experience, another five billion euros were transferred to Woori Bank in 2017, only to meet

the same fate.  If that sounds like a tall tale, it is because it almost certainly is.  Documents

attached to AJ Energy's operative complaint lead to only one plausible inference: that the two

wire transfers, upon which all of AJ Energy's claims in this case depend, didn't happen.

Documents beyond the operative complaint — including one or more documents that are almost

certainly forgeries — make that conclusion nearly inescapable.  On these bases and others,

Woori Bank moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss

AJ Energy's claims and moves, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for

sanctions.  AJ Energy, undeterred, cross-moves for sanctions of its own.

        For the reasons that follow, Woori Bank's motions are both granted, AJ Energy's motion

for sanctions is denied, and AJ Energy's claims are dismissed with prejudice.

## BACKGROUND

In evaluating Defendants' motion to dismiss, the Court may consider "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Accordingly, the following facts are drawn only from the First Amended Complaint ("FAC"), its exhibits, and the documents it incorporates.[1]

AJ Energy is a Nevada limited liability company, the nature of whose business is not alleged in the FAC. ECF No. 19 ("FAC"), ¶ 1. On September 21, 2015, AJ Energy entered into a joint venture agreement and "Business Asset agreement" with NRG CO, Ltd. ("NRG"), a Korean company, and Hestiun Finance Limited ("Hestiun"), "a company registered in the United Kingdom," to "make and manage investments in the Republic of Korea." *Id.* ¶¶ 12, 14, 19. Under the terms of these agreements, Hestiun was to provide three billion euros (the source of which is not alleged in the FAC) for investments; AJ Energy was to "arrange the investment funds" and manage them alongside NRG; and the funds were to pass from Hestiun to AJ Energy and NRG by way of a "common account" shared between Deutsche Bank AG, a financial institution based in Frankfurt, and Woori Bank, which is based in South Korea. *Id.* ¶¶ 14, 16-17;

---

[1] Both parties submitted affidavits and declarations in connection with the present motions. *See* ECF Nos. 31-1, 37, 54, 57-1, 61. The Court may not consider those affidavits and declarations in connection with the motion to dismiss, *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Simon v. City of New York*, No. 14-CV-8391 (JMF), 2015 WL 2069436, at *1 n.2 (S.D.N.Y. May 4, 2015), and, accordingly, makes no reference to their contents in the description of the relevant background that follows. The Court may consider the affidavits in connection with the parties' motions for sanctions and, thus, refers to them as appropriate in the discussion of those motions below.

*id.* Ex. 2, at 6-7.[2]  The plan was for Hestiun to transfer the euros to Deutsche Bank AG; for

Deutsche Bank AG to then transfer "the corresponding amount" in Korean currency to Woori

Bank; and for Woori Bank to then transfer the funds to NRG.  *See* FAC ¶¶ 17, 21; *id.* Ex. 2, at 6-

7; *id.* Ex. 3, at 12-14, 16-18; *id.* Ex. 7, at 6.

AJ Energy alleges that, on an unspecified date in 2015, Hestiun "agreed to transfer €3

Billion to the common account which was then transferred to NRG's Account Number XXXX-

XXX-XX6393 with NRG to be credited to NRG's account at Woori Bank."  FAC ¶ 21.[3]  The

FAC refers to an attached exhibit, Exhibit 5, as evidence of the €3 billion wire transfer.  *Id.* ¶ 22.

Exhibit 5 appears to be a message sent through the Society for Worldwide Interbank

Telecommunication ("SWIFT") messaging system concerning a wire transfer of €3 billion

involving Hestiun Finance Limited and NRG Co.  *Id.* ¶ 23.  It lists "07/10/15" as the "DATE OF

UPLOAD" and "08/10/15" as the "DATE RECORDED," and it shows a "Reference No." and

"UTR" (or "Unique Transaction Reference") of "DEUT997856743216" and a "Transaction ID"

of "090512DEUTDEFFXXX886479."  *Id.* Ex. 5.[4]  Compounding matters, the FAC attaches as

---

[2]    A common account "is a special account used between Woori Bank and Deutsche Bank
for transactions and it is called a common account (common account and/or correspondent
account), where it is used worldwide to transact large sums of funds."  FAC ¶ 17.

[3]    Account numbers are redacted throughout this Opinion and Order in accordance with
Rule 5.2(a)(4) of the Federal Rules of Civil Procedure.

[4]    AJ Energy's initial Complaint attached a similar document as purported evidence for the
€3 billion wire transfer.  *See* ECF No. 1-1, at 28.  That document identified a €3 billion
transaction and had the exact same "Reference No.," "UTR," and "Transaction ID" as Exhibit 5
to the FAC.  *See* ECF No. 1-1, at 28.  Notably, however, the document attached to the initial
Complaint identified "First Clearing, LLC" as the beneficiary, and the "message text" stated that
the transfer was in favor of "beneficiary Bank Wells Fargo Bank N.A. San Francisco . . . for
further credit to Contained Media Group, LLC" — entities that are not mentioned elsewhere in
the initial Complaint or in the FAC.  *Id.*  The FAC states that this document is "unrelated" and
was "erroneously attached" to the initial Complaint.  FAC ¶ 22.

Exhibit 6 a second SWIFT message as additional purported documentary evidence of the €3 billion transaction. Exhibit 6 appears to discuss a transaction between Hestiun Finance and NRG Co., but it includes a different reference number and references an "issue date" of "03 FEB 2016," *id.* Ex. 6, which does not match either date in Exhibit 5. And finally, the alleged €3 billion transfer is also referenced in Exhibit 3, the purported "Business Asset agreement . . . between Hestiun and NRG." *Id.* ¶ 19. The first page of that document, however, identifies a €3 billion transaction in August 2015 "TO THE 'COMMON ACCOUNT' IN DEUTSCHE BANK AG IN FAVOR OF AND FOR FURTHER BENEFIT OF WEHRHAHN GMBH." *Id.* Ex. 3, at 12.[5] "Wehrhahn GMBH" is never again mentioned in the FAC or the documents attached to it.

According to the FAC, Woori Bank "pulled the funds from the common account," but "failed to further credit the funds to NRG's account at Woori Bank." *Id.* ¶ 25. Woori Bank "at first promised to return the funds." *Id.* ¶ 26. In particular, certain unnamed "Officers" of the Bank and "South Korea's Minister of Strategy and Finance, Choi Sang Mok, promised to return the €3 Billion if AJ Energy would invest more funds into the South Korean Economy." *Id.* ¶ 27. But the Bank soon changed its tune, denying that it had received the funds and "never return[ing] any funds to Plaintiff." *Id.* ¶ 28. (The FAC does not explain why the funds would have been "returned" to AJ Energy as opposed to Hestiun, the entity that allegedly had transferred them.) Despite the alleged theft of such a massive amount of money, "Plaintiff felt reassured, given that Plaintiff was in close consultation with officials from Korea's Ministry of Strategy and Finance" and with unnamed "Woori Bank Officials." *Id.* ¶ 30.

---

[5] Due to inconsistent pagination in the exhibits to the FAC, citations to ECF Nos. 19-1 and 19-2 refer to the page numbers automatically generated by the ECF system to avoid confusion.

Driven by this reassurance, on February 10, 2017, AJ Energy allegedly entered into another agreement, this time with Maybrook Financial Group Ltd. ("Maybrook"), "a British financial company," to use the same intermediary common account to invest "another €5 billion." *Id.* ¶¶ 31-32; *see id.* Ex. 9, at 12-15. As with the first alleged transfer, Woori Bank "pulled the funds from the common account," but failed to "ever actually deposit[] any funds into" AJ Energy's account. *Id.* ¶¶ 35-36. Once again, the FAC attaches certain documents as evidence of this purported transaction. The first, Exhibit 9, purports to be a "Business / Asset Management Agreement." *Id.* Ex. 9, at 12. Notably, it contains the same Unique Transaction Reference and Reference Number ("DEUT997856743216") and Transaction ID ("090512DEUTDEFFXXX886479") as the documents relating to the alleged €3 billion transaction. *Id.* at 13. It also includes a message signed by Deutsche Bank AG's Chief Financial Officer, Dr. Marcus Schenck, and Chief Risk Officer, Stuart Lewis, but curiously it is on Maybrook letterhead. *Id.* at 24. A second, Exhibit 12, purports to be a letter from Dr. Schenck and Mr. Lewis to Woori Bank's "CEO/President," and states that Deutsche Bank AG's "records show that Woori Bank pulled the funds from the common account XXXXXX01KR on 8 March 2017, but did not place the funds into the AJ ENERGY account yet." FAC Ex. 12, at 43. The letter asked Woori Bank to "release the funds to AJ ENERGY LLC immediately to avoid legal action." *Id.*; *see id.* ¶ 38. Significantly, the signatures of Dr. Schenck and Mr. Lewis on the letter do not match the signatures in Exhibit 9. *Compare* FAC Ex. 9, at 24, *with* Ex. 12, at 43.

In short, AJ Energy alleges that Woori Bank effectively stole €8 billion — up to $10 billion dollars. Based on that allegation, it brings claims for fraud, *see id.* ¶¶ 50-66, negligent misrepresentation, *see id.* ¶¶ 67-79, conversion, *see id.* ¶¶ 80-98, unjust enrichment, *see id.*

¶¶ 99-105, and breaches of contract, *see id.* ¶¶ 106-17.[6]

## THE MOTION TO DISMISS

The Court begins with Woori Bank's motion to dismiss. In evaluating that motion, the Court must accept all facts set forth in the FAC as true and draw all reasonable inferences in AJ Energy's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Significantly, a district court reviewing a motion to dismiss is not required to credit conclusory allegations unsupported by facts, *Ashcroft*, 556 U.S. at 678-79, 686, or to suspend common sense in conducting its analysis, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" (internal quotation marks omitted)). Nor is a district court "obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or

---

[6]      AJ Energy named Woori America Bank as a Defendant in the initial Complaint, but voluntarily dismissed all claims against Woori America Bank. *See* ECF No. 28.

incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); *see also DeBlasio v. Merrill Lynch & Co.*, No. 07-CV-318 (RJS), 2009 WL 2242605, at *26 (S.D.N.Y. July 27, 2009) (noting that where a "broad contention sits in significant tension with Plaintiffs' other allegations . . . the Court is not obligated to accept it as true"); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely.").

## A.  The FAC Is Facially Implausible

Woori Bank first moves to dismiss the FAC in its entirety on the ground that various internal inconsistencies in the FAC and its attachments render AJ Energy's claims facially implausible.  *See* ECF No. 25 ("Mot. Dismiss"), at 8-9.  The Court agrees.

On their face, the allegations in this case certainly strain credulity.  Putting aside the question of how AJ Energy and its partners came into possession of €8 billion in the first place, it is — to put it mildly — hard to believe that anyone would, after wiring and losing *€3 billion*, wire *another €5 billion* to the same bank.  The Court could probably dismiss AJ Energy's claims — all of which depend on the existence of the two wire transfers — on that basis alone.  *See, e.g.*, *In re Agria Corp. Sec. Litig.*, 672 F. Supp. 2d 520, 527 (S.D.N.Y. 2009) (noting that the motion-to-dismiss standard "screens out the little green men cases" (internal quotation marks omitted)).  But the Court need not go that far because the existence of the wire transfers is implausible in light of the factual allegations in the FAC itself.  That is, the FAC and its exhibits include several significant factual inconsistencies that render the very basis of their claims — the

two alleged wire transfers — entirely implausible. A few examples will suffice.

First, according to the documents attached to the FAC, the €3 billion transaction and the €5 billion transaction share the same "Reference Number" and "Transaction ID." *Compare* FAC Ex. 5, *with id.* Ex. 9, at 24. (The same numbers appeared on a document referencing yet another transaction that was attached to the initial Complaint, *see* ECF No. 1-1 at 28, which AJ Energy now calls an "unrelated document" that was "erroneously attached." FAC ¶ 22.) This is implausible on its face. According to the FAC, the €3 billion transaction was executed sometime in October 2015, and the funds originated with Hestiun for the ultimate benefit of NRG. *Id.* ¶¶ 21, 107-08. By contrast, the €5 billion transaction was allegedly executed "[o]n February 13, 2017," from Maybrook for the ultimate benefit of AJ Energy. *Id.* ¶¶ 41-42. In other words, AJ Energy's claims are dependent on two transactions separated by more than one year and involving completely different parties that are nevertheless alleged to have shared the same Reference Number and Transaction ID. That defies common sense and exceeds the limits of credulity.[7] The only reasonable — that is, plausible — inference is that the transactions did not occur.

Second, the FAC and its exhibits list inconsistent dates, account numbers, and beneficiaries for the purported €3 billion transfer. For instance, Exhibit 5 lists "07/10/15" as the "DATE OF UPLOAD" and "08/10/15" as the "DATE RECORDED," *id.* Ex. 5, dates that predate

---

[7] In support of its opposition to Woori Bank's motion, AJ Energy submits an affidavit from its principal stating that the "Bank Unique Transaction Reference" and "Bank Source Transaction ID" refer to Deutsche Bank generally, not to a particular transaction. ECF No. 31-1, ¶ 24). But the Court may not consider the affidavit in connection with the motion to dismiss. In any event, the explanation is inconsistent with the plain language of the documents.

when AJ Energy allegedly joined the joint venture that produced the transaction, *see id.* ¶ 12.[8]

Meanwhile, Exhibit 6 lists another date altogether: an "issue date" of "03 FEB 2016." *Id.* Ex. 6, at 2. On top of that, Exhibit 6 lists Hestiun's Deutsche Bank account number as 8XXXXXXX, while Exhibit 5 lists its Deutsche Bank account number as 9XXXXXXX. And complicating matters further, the account number that appears on Exhibit 5 is associated elsewhere in the documents attached to the FAC with Maybrook, not Hestiun. *See* FAC Ex. 9, at 14, 23; *id.* Ex. 12, at 43. And finally, Exhibit 3 purports to be a "Business Asset agreement" between Hestiun and NRG, *see id.* ¶ 19, but the first page of the document identifies a €3 billion transaction in August 2015 "TO THE 'COMMON ACCOUNT' IN DEUTSCHE BANK AG IN FAVOR OF AND FOR FURTHER BENEFIT OF WEHRHAHN GMBH." *Id.* Ex. 3, at 12. Needless to say, if the €3 billion transaction actually occurred, AJ Energy should have no trouble consistently identifying the date of the transactions and the parties and accounts involved (not to mention attaching documentation that would demonstrate beyond peradventure that the transaction took place). Again, the only reasonable — that is, plausible — inference is that it did not occur.

The inconsistencies and red flags don't stop there. The FAC alleges that Deutsche Bank AG's Chief Financial Officer, Dr. Marcus Schenck, and its Chief Risk Officer, Stuart Lewis,

---

[8] In its opposition, AJ Energy attempts to explain the date discrepancies by stating that "in Western Europe, including Germany, a date is written, with the day first, followed by the month." ECF No. 31 ("Opp'n"), at 2. But other documents do not conform to that convention. *See, e.g.*, FAC Ex. 3, at 7 (referring, in the space of a single page, to "August 5, 2015," "5 August 2015," and "08.05.2015"). In any event, the observation does not explain all of the discrepancies. Accepting AJ Energy's assertion for the sake of argument, the FAC still alleges three *different* dates with respect to the timing of the €3 billion transfer: October 7, 2015, October 8, 2015, and February 3, 2016, and provides no explanation for why the "issue date" is four months after the "date of upload" and "date recorded." *Id.* Ex. 5 at 24 (date of upload, date recorded); Ex. 6 at 2 (issue date).

wrote a message confirming the €5 billion transfer. *Id.* Ex. 9, at 24. But their message appears — implausibly and without explanation — on Maybrook letterhead. *See id.* The FAC also attaches a second message purporting to be from Dr. Schenck and Mr. Lewis to Woori Bank's CEO, stating that Deutsche Bank AG's "records show that Woori Bank pulled the funds from the common account XXXXXX01KR on 8 March 2017, but did not place the funds into the AJ ENERGY account yet." *Id.* Ex. 12, at 43. The FAC provides no explanation for how Deutsche Bank AG's records would show whether Woori Bank had deposited money in AJ Energy's account at a different bank. And finally, the two documents purporting to be from Dr. Schenck and Mr. Lewis contain other indicia of implausibility. The signature blocks in the second letter include a "PIN," a "SSN" (presumably, a Social Security Number), and a five-digit "ZIP code" (one of which is associated with New Hampshire), despite a German address in the letterhead. *Id.* Ex. 12, at 43. And perhaps most troubling, the signatures for Dr. Schenck and Mr. Lewis on the two documents bear no resemblance to each other. *Compare id.* Ex. 9, at 24, *with id.* Ex. 12, at 43.[9]

The Court need not go on. Although the Court is required to assume the truth of the allegations in the FAC, it is not required to discard its common sense. *Cf. Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (noting that even where a court's review is deferential, it is "not required to exhibit a naiveté from which ordinary citizens are free" (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)). Nor is the Court required to

---

[9]     To be sure, the identification of handwriting is ordinarily an issue of fact that cannot be resolved on a motion to dismiss. *See, e.g.*, *Feehan v. Feehan*, No. 09-CV-7016 (DAB) (THK), 2010 WL 3734082, at *9 (S.D.N.Y. July 26, 2010), *report and recommendation adopted*, 2010 WL 3734079 (S.D.N.Y. Sept. 22, 2010). Here, however, the signatures are transparently different. Moreover, as noted, the discrepancy is not the only red flag in the documents.

sustain claims that "are implausible in light of factual allegations *in the pleading itself*."  *Krys v. Pigott*, 749 F.3d 117, 133 (2d Cir. 2014) (emphasis added).  That is the case with AJ Energy's claims, all of which depend on the existence of the two wire transfers totaling €8 billion.  Because the only reasonable — that is, plausible — inference is that those wire transfers did not occur, all of AJ Energy's claims must be and are dismissed.

## B.  The Individual Claims Fail as a Matter of Law

Second, and in any event, each of AJ Energy's six claims — for fraud, negligent misrepresentation, conversion, breach of contract, and unjust enrichment — is subject to dismissal on its own terms.  The Court will address each claim in turn.[10]

### 1.  Fraud and Negligent Misrepresentation

AJ Energy's first and second claims are for fraud and negligent misrepresentation.  In the circumstances of this case, both claims are subject to the heightened pleading standards set forth in Rule 9(b) of the Federal Rules of Civil Procedure.  *See, e.g.*, *Dunham v. Covidien LP*, No. 19-CV-2851 (LLS), 2019 WL 2461806, at *4 n.5 (S.D.N.Y. May 22, 2019) ("Rule 9(b) applies to negligent misrepresentation claims that sound in fraud."); *accord Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 254 (S.D.N.Y. 2011).  Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

---

[10]    As Woori Bank notes, AJ Energy's "incoherent claims make it impossible to assess what law should ultimately apply to this diversity jurisdiction case."  Mot. Dismiss 12 n.10.  Nevertheless, because AJ Energy fails to define the applicable law; because its allegations seem to broadly "track[] the elements of . . . New York law"'; and because the parties both assume, for the purpose of this motion, that New York law applies, the Court applies New York law here.  *Hilton Head Holdings v. Peck*, No. 11-CV-7768 (KBF), 2012 WL 613729, at *5 (S.D.N.Y. Feb. 23, 2012); *see Response Pers., Inc. v. Hartford Fire Ins. Co.*, 812 F. Supp. 2d 309, 314 (S.D.N.Y. 2011) ("The parties' briefs assume that New York law controls. Therefore, under the New York choice-of-law rule, New York law applies.").

Fed. R. Civ. P. 9. The Rule "requires a plaintiff to adequately specify the statements it claims were false or misleading, give particulars as to the respect in which the plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 290 (S.D.N.Y. 2016) (internal quotation marks omitted); *see Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) ("Under Rule 9(b), . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." (internal quotation marks omitted)); *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("[P]laintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so").

AJ Energy's allegations fall woefully short of meeting this standard. Indeed, the FAC fails to allege any particular representation by Woori Bank, let alone to identify any individual speaker at the Bank, where or when a fraudulent statement was made, or why any particular statement was fraudulent. At most, the FAC alleges that some unidentified Woori Bank "Officers" lured AJ Energy "into investing more money with the promise of the return of the €3 billion." FAC ¶ 51; *see also id.* ¶ 27. But that does not come close to cutting it. *See, e.g.*, *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (affirming that fraud claims based solely on factual allegations that lack any "elaboration on what representations . . . were made or why those representations were false" should be dismissed); *Sanchez v. ASA Coll., Inc.*, No. 14-CV-5006 (JMF), 2015 WL 3540836, at *11 (S.D.N.Y. June 5, 2015) (dismissing a claim under Rule 9(b) where the complaint included "a few examples of various marketing materials containing" false or misleading statements, but included "virtually no details as to when and where those materials were disseminated" and "no specific information about when" certain mandatory "regular reports

. . . were sent" by the defendant to its accreditor); *United States v. All Right, Title & Interest in Real Prop. & Appurtenances Thereto Known as 35-37 E. Broadway*, No. 12-CV-4034 (HB), 2013 WL 4006073, at *6 (S.D.N.Y. Aug. 6, 2013) (holding that allegations that fraudulent representations occurred "[d]uring or about the summer of 2008" were insufficient under Rule 9(b)); *see also DeFazio v. Wallis*, 500 F. Supp. 2d 197, 206 (E.D.N.Y. 2007) (finding that the plaintiff's claims of fraudulent mailings failed under Rule 9(b) because they did "not explain what the [fraudulent] forms are; what information they contained; when the documents were mailed; or who sent them"). And while AJ Energy asserts that greater particulars are "a matter of discovery," Opp'n 4, that is plainly not the law where, as here, claims sound in fraud.

AJ Energy's negligent misrepresentation claim fails as a matter of law for another reason. To prevail on a claim of negligent misrepresentation under New York law, a plaintiff must plead and prove, among other things, "the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 910 F. Supp. 2d 543, 546 (S.D.N.Y. 2012) (internal quotation marks omitted); *accord McBeth v. Porges*, 171 F. Supp. 3d 216, 228 n.7 (S.D.N.Y. 2016). It is well established, however, that the "relationship between a bank and its depositor is one of debtor and creditor" and that "an arm's-length borrower-lender relationship . . . does not support a cause of action for negligent misrepresentation." *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 578 (2011) (citations omitted); *see also JPMorgan Chase Bank, N.A. v. Freyberg*, 171 F. Supp. 3d 178, 184, 191 (S.D.N.Y. 2016) (holding that the bank-depositor relationship is "is not a fiduciary or special relationship"). Here, the relationship between AJ Energy and Woori Bank is one step even further removed from that of depositor and

bank, as the FAC alleges (at best) that Hestiun and Maybrook deposited the funds at issue. It follows that the negligent misrepresentation claim must be and is dismissed.

## 2. Conversion

AJ Energy's conversion claim is easily dismissed as well. "To state a claim for conversion under New York law, plaintiffs must (1) 'show legal ownership of, or a superior possessory right in, the disputed property' and (2) 'that the defendant exercised an unauthorized dominion over that property to the exclusion of the plaintiffs['] rights." *Segal v. Bitar*, No. 11-CV-4521 (LBS), 2012 WL 273609, at *8 (S.D.N.Y. Jan. 30, 2012) (quoting *Middle East Banking Co. v. State Street Bank Int'l*, 821 F.2d 897, 906 (2d Cir.1987)). New York courts have uniformly held, however, that a claim for conversion does not lie with respect to moneys deposited with a bank. *See, e.g.*, *Acevado v. Citibank, N.A.*, No. 10-CV-8030 (PGG), 2012 WL 996902, at *11-12 (S.D.N.Y. Mar. 23, 2012) (citing cases). Such funds "become an asset of the bank, and the bank, in turn, becomes indebted to the depositor." *Id.* (internal quotation marks omitted). It follows that "when the bank has misused the depositor's money, the depositor's remedy lies in contract — not tort." *Id.* (internal quotation marks omitted). Here, of course, the FAC does not even allege that AJ Energy deposited the funds at issue. It follows that AJ Energy cannot show that it ever "possess[ed] lawful control over" the funds. *Id.* Accordingly, the conversion claim must be and is dismissed as well.

## 3. Breach of Contract

Next, Woori Bank moves to dismiss AJ Energy's two claims for breach of contract. Under New York law, four elements are required to plead a breach of contract: (1) the existence of a contract, (2) the performance of the contract by the plaintiff, (3) breach by the defendant,

and (4) damages suffered as a result of the breach.  *See, e.g., Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).  Critically, "[a] complaint 'fails to sufficiently plead the existence of a contract' if it does not provide 'factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms.'  Conclusory allegations that a contract existed or that it was breached do not suffice."  *Emerald Town Car of Pearl River, LLC v. Philadelphia Indem. Ins. Co.*, No. 16-CV-1099 (NSR), 2017 WL 1383773, at *7 (S.D.N.Y. Apr. 12, 2017) (quoting *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand*, 455 F. App'x. 102, 104 (2d Cir. 2012) (summary order)); *accord Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (dismissing a contract claim where the complaint alleged, "in a conclusory fashion, that there was an express contractual relationship between the parties, but it d[id] not include any details regarding this alleged express contract" (internal quotation marks omitted)); *Eaves*, 785 F. Supp. 2d at 259-60 (holding that the plaintiffs' failure to "provide facts regarding any specific contract between the parties, how or when such contract was formed, or any terms of the contract(s) at issue" was "fatal" to their contract claims).

Applying those standards here, AJ Energy's contract claims are plainly deficient.  AJ Energy's fifth cause of action is based solely on the vague allegation that Woori Bank promised AJ Energy "[i]n or about September or October 2015" that, "if it invested €3 Billion in South Korean These [sic] funds were to be used to purchase precious commodities and government securities."  FAC ¶ 107.  And its sixth cause of action is based on the assertion that, "[o]n or around September 2016," it entered an agreement with Woori Bank pursuant to which "[AJ Energy's] €3 Billion would be returned to its rightful owner if AJ Energy agreed to a €5

Billion investment" and that "Woori Bank had promised to invest the funds into . . . specific investments." *Id.* ¶¶ 113-14. These amorphous and conclusory allegations do not suffice to establish the existence of a contract. And it is no help to assert, as AJ Energy does in its opposition, that "Defendants [sic] deposited the funds into Woori Bank's common account as a depositor" and that "Defendant [sic]" thus "became a creditor of Woori Bank." Opp'n 8. For one thing, that theory is nowhere alleged in the FAC itself, and "the complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Clark v. Student Loan Fin. Corp.*, No. 18-CV-9354 (JPO), 2019 WL 4412571, at *5 (S.D.N.Y. Sept. 16, 2019). For another, the FAC identifies other parties — Hestiun and Maybrook — as the depositors of the funds at issue. Thus, assuming for the sake of argument that the FAC's allegations concerning the depositor-bank relationship suffice to establish the existence of a contract, it is not a contract to which AJ Energy was a party. Accordingly, the contract claims must be and are dismissed.

### 4. Unjust Enrichment

Finally, the Court need not address the merits of AJ Energy's unjust enrichment claim because AJ Energy did not seek to defend it against Woori Bank's motion. It is well established that a district court "may, and generally will, deem a claim abandoned when a [counseled] plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (internal quotation marks omitted); *see, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 (TPG) (FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address defendant's arguments in support of dismissing the claim."); *see generally Jackson v. Federal Exp.*, 766 F.3d 189, 196 (2d

Cir. 2014).  Here, although Woori Bank unambiguously moved to dismiss the unjust enrichment claim, *see* Mot. Dismiss 18-19, AJ Energy does not mention unjust enrichment, let alone respond to Woori Bank's arguments, in its opposition papers (or in its many supplemental submissions thereafter).  Accordingly, the claim is dismissed with prejudice as abandoned.  *See, e.g.*, *Verdi v. City of New York*, 306 F. Supp. 3d 532, 552 (S.D.N.Y. 2018).

## THE MOTIONS FOR SANCTIONS

With that, the Court turns to the issue of sanctions.  As noted, both parties move for sanctions.[11]  The motions require consideration of materials beyond the FAC and its attachments.  Thus, the Court begins with some additional background.

### A.  Additional Background

AJ Energy filed this lawsuit in state court (from which it was timely removed) on March 26, 2018.  *See* ECF No. 1, ¶ 1.  On or about April 5, 2018, counsel for Woori Bank sent AJ Energy's counsel and principal a letter asserting that the claims were "legally baseless" and dependent "upon false assertions of fact."  ECF No. 35-1, at 1.  More specifically, the letter stated that "a reasonable investigation . . . would have revealed that the alleged transfers" upon which AJ Energy's claims were based "never occurred."  *Id.* at 2.  In support of that statement, the letter noted that NRG had sued Woori Bank in South Korea for allegedly failing to transfer ₩ billion and that Deutsche Bank, at the request of the Korean Court, had formally denied the existence of any documentation confirming the alleged transfer or the alleged "common

---

[11]     AJ Energy did not file a formal motion in compliance with the Local Rules.  Additionally, it improperly submitted a sur-reply in opposition to Woori Bank's motion for sanctions without seeking leave of Court to do so.  *See* ECF Nos. 48, 50.  The Court will disregard these procedural improprieties and consider all of AJ Energy's arguments and its own request for sanctions.

account." *Id.* (The letter provided a certified English translation of Deutsche Bank's submission for reference.)[12] The letter noted that, separate and apart from the Deutsche Bank submission to the Korean Court, "several additional indicia of falsity" were "readily apparent" and that the "documents appended to the Complaint appear[ed] to be of dubious veracity." *Id.*

On or about April 12, 2018, counsel for Woori Bank sent another letter to AJ Energy's counsel and principal. *See* ECF No. 35-2. Among other things, that letter attached SWIFT messages from Deutsche Bank stating that it was "unable to locate any payment details" in connection with the Unique Transaction Reference listed in the attachments to the Complaint. *Id.* at 2. The letter also noted "several other indicia of falsity that should have been readily apparent from any reasonable investigation of the documents filed with [the] Complaint": (1) that the Unique Transaction Reference numbers "listed for both alleged wire transfers is identical"; (2) that the documentation purporting to evidence the alleged €3 billion transfer listed as its beneficiary "First Clearing, LLC" and message text indicating that the payment was in favor of Wells Fargo Bank N.A. for "further credit" to Contained Media Group, LLC; and (3) that the two purported signatures of Dr. Schenck did not match and that the letter in Exhibit 1 to the Complaint (which corresponds to Exhibit 9 to the FAC) "appears on Maybrook Financial Group Ltd. letterhead, rather than Deutsche Bank letterhead." *Id.* at 2-3.

On May 4, 2018, Woori Bank filed a motion to dismiss the Complaint, pressing largely the same arguments that they pressed later with respect to the FAC (with which the Court substantially agreed above). *See* ECF Nos. 9, 10. The same day, counsel for Woori Bank sent

---

12      According to Woori Bank, the Korean Court dismissed NRG's complaint "due to insufficient evidence to conclude that Woori Bank received the €3 billion wire." ECF No. 38, ¶ 8.

AJ Energy's counsel and principal yet another letter, attaching an affidavit from Mohamed Kaba, an Assistant Vice President of Deutsche Bank, A.G., "attesting that the transactions . . . did not occur," and warning that "continued prosecution of this action" would violate Rule 11. ECF No. 11. In the affidavit, which was sworn to in New York, Kaba swore that he had "reviewed the Complaint and the attachments thereto," and had "searched the records of Deutsche Bank concerning the existence of the transactions alleged in the Complaint." *Id.* ¶ 2. Kaba stated that Deutsche Bank had "not identified any record" of the transactions alleged in the Complaint or reflected in the exhibits attached to the Complaint. *Id.* ¶¶ 3-9. "Additionally," Kaba affirmed, "the signatures purporting to be the signatures of Dr. Marcus Schenk or Mr. Stuart Lewis do not appear to be authentic." *Id.* ¶ 3; *see also id.* ¶ 5. Kaba further stated that "Deutsche Bank did not send the letter attached as Exhibit 3 to the Complaint" (which is attached as Exhibit 12 to the FAC) "and the letter purporting to be from Deutsche Bank does not appear to be authentic." *Id.* ¶ 5. Finally, Kaba affirmed that Deutsche Bank had "not identified any record of a common account number matching the one referenced in paragraph 39 of the Complaint" — that is, the "common account" from which Woori Bank allegedly stole AJ Energy's funds. *Id.* ¶ 10.

Undeterred, AJ Energy proceeded to file the FAC, largely repeating the allegations made in the initial Complaint (but replacing the exhibit referencing "First Clearing, LLC" with Exhibit 5). *Compare* ECF No. 1-1, Ex. 3, *with* FAC Ex. 5. Woori Bank served AJ Energy with its Rule 11 motion on or about June 15, 2018, and filed a "substantially identical" version of the motion (along with an updated version of the Kaba affidavit) on July 10, 2018. ECF No. 49, at 4 n.1; *see* ECF Nos. 33, 39. On March 28, 2019, AJ Energy filed a letter seeking leave to file "an affidavit, certified by a European Court," allegedly showing that the Kaba affidavits submitted

by Woori Bank were "fraudulent" and that "the theft actually happened." ECF No. 52. After the Court granted leave, AJ Energy filed an affidavit purporting to be from Christian Sewing, CEO of Deutsche Bank AG — a copy of which is attached to this Opinion and Order as Appendix B. *See* ECF No. 54. To the extent relevant here, the Sewing affidavit stated that "[a]ll statements of facts [sic] provided in the [FAC] are factually [sic] and true"; that the documents attached to the FAC as evidence of the two wire transfers are "copies of authorized original documents from Deutsche Bank AG, Frankfurt and therefore true and correct"; that the transfers did occur as alleged in the FAC; that the "common account" alleged in the FAC "exists"; that Kaba's affidavits were "not authorized by Deutsche Bank AG, Frankfurt, Germany"; and that Kaba had "no access or knowledge regarding Deutsche Bank AG, Frankfurt's transactions related to Woori Bank's common account." *Id.* ¶¶ 3-18. On the last page of the document appears an apostille stamp purporting to be from the Frankfurt Regional Court.

On April 12, 2019, Woori Bank filed a letter contending that the Sewing affidavit "is a forgery." ECF No. 57, at 1. In support of that contention, Woori Bank attached an affidavit from Erin Donovan, "a Vice President in Deutsche Bank AG's Anti-Financial Crimes Division," attesting that the purported Sewing affidavit "is fraudulent," and affirming that the Kaba affidavits were in fact "authorized by Deutsche Bank," that the Anti-Financial Crimes Division "functions on an international basis," and that the contents of the Kaba affidavits were accurate. ECF No. 57-1. In its letter, Woori Bank also noted that the purported Sewing affidavit "bears numerous indicia of inauthenticity on its face," including (1) "formatting and syntax errors" that would be surprising to find in an affidavit from "a major international bank's CEO"; (2) the absence of a notarial certificate, a prerequisite to authentication under international conventions;

(3) the absence of a date and an apostille number in the apostille; and (4) the absence of a seal from the Frankfurt Regional Court. ECF No. 57, at 1-3. The letter further noted that, "although the Exhibit's first and last pages appear to be bound using red ribbon through three holes with grommets, the three holes are not visible on the other scanned pages." *Id.* at 3.[13]

Finally, on April 29, 2019, Woori Bank filed a declaration from Max D. Stein, "European Counsel in the Frankfurt office of Skadden, Arps, Slate, Meagher & Flom LLP." ECF No. 61. Stein's affidavit attached an exchange of correspondence between him and the Frankfurt Regional Court listed in the apostille on the purported Sewing affidavit (and certified translations of the correspondence). ECF Nos. 61-1 to 61-4. In his letter, dated April 16, 2019, Stein enclosed the purported Sewing affidavit and asked for written confirmation "that the Apostille allegedly coming from the Frankfurt Regional Court was in fact not issued by the Regional Court and, therefore, is a forged document." ECF No. 61-2, at 1. In the response, dated April 23, 2019, the Frankfurt Regional Court stated that "[o]wing to several discernible abnormalities, there are considerable reservations regarding the authenticity" of the apostille on the purported Sewing affidavit. ECF No. 61-4, at 1. The letter noted, among other things, that the apostille was missing "the date of [its] issue" and the "reference number of" the "competent authority" purporting to sign it, and was "not placed on a public record" as required by the Hague Convention; that the Frankfurt Regional Court would not itself "confirm[]" a CEO's capacity in a "stock corporation . . . by way of an [a]postille"; that the apostille did not have "a second seal impression," which the Frankfurt Regional Court normally places on its apostilles; and that "a

---

[13]     The letter also noted that Woori Bank had "provided the fraudulent Exibit and the Donovan Affidavit to the FBI and the United States Attorney's Office for the Central District of California." *Id.* at 1 n.1.

comparison of the signature of the commissioned judge at the Regional Court . . . shows

considerable differences from the signature" in the "allegedly issued" apostille. *Id.* at 1-3.[14]

## B.  Applicable Legal Standards

Rule 11(b) provides that, "[b]y presenting to the court a pleading, written motion, or

other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information,

and belief, formed after an inquiry reasonable under the circumstances . . . the factual

contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P.

11(b)(3).  If a court determines that Rule 11(b) has been violated, Rule 11(c) authorizes the court

to "impose an appropriate sanction."  Fed. R. Civ. P. 11(c)(1).  Such a sanction, however, "must

be limited to what suffices to deter repetition of the conduct or comparable conduct by others

similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty

into court; or, if imposed on motion and warranted for effective deterrence, an order directing

payment to the movant of part or all of the reasonable attorney's fees and other expenses directly

resulting from the violation."  Fed. R. Civ. P. 11(c)(4).

Rule 11 thus imposes an "affirmative duty on each attorney to conduct a reasonable

inquiry into the viability of a pleading before it is signed." *Gutierrez v. Fox*, 141 F.3d 425, 427

(2d Cir. 1998) (internal quotation marks omitted).  The standard for imposing Rule 11 sanctions,

---

[14]     On May 23, 2019, AJ Energy's counsel sought leave "to submit an Affidavit signed by Deutsche Bank, AG Frankfurt, Germany's CEO Christian Sewing, notarized and certified to be sent directly from Court to Court."  ECF No. 62, at 1.  "Sending the Affidavit Court to Court," counsel insisted, "would once and for all remove any doubt that this document could be fraudulent." *Id.*  By Order entered the next day, the Court denied the request, stating that the parties had had "ample opportunity to make submissions in connection with the pending motion and" indeed had "already been allowed to supplement those submissions."  ECF No. 63.

however, is purposefully high, so as not to stifle legal creativity and zealous advocacy. *See City of Perry, Iowa v. Procter & Gamble Co.*, No. 15-CV-8051 (JMF), 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017). Among other things, a court must "resolve all doubts in favor of the signer" of the pleading, *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993), and may impose sanctions only where an attorney's conduct was "objective[ly] unreasonable[]," *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003). Indeed, sanctions are appropriate where "it should have been patently obvious to any attorney who had familiarized himself [or herself] with the law" that the action was frivolous. *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988); *see also Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success." (internal quotation marks omitted)). But "a party is not immune from sanctions merely because it had a reasonable basis at the time it filed its initial pleading to believe that its claim was valid. Instead, a court may impose sanctions on a party for refusing to withdraw an allegation or claim even after it was shown to be inaccurate." *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) (citation and internal modifications omitted), *aff'd*, 753 F. App'x 3 (2d Cir. 2018).

## C. Woori Bank's Motion

Applying these standards here, the Court easily concludes that sanctions should be imposed on both AJ Energy and its counsel. Indeed, that conclusion all but follows from the Court's determination that the FAC is implausible on its face. Under Rule 11, AJ Energy and its counsel were required to have "an adequate, non-frivolous basis in fact for their claims." *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400 (NRB), 2008 WL 4386764, at *13

(S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009). Yet the FAC and its attachments themselves make plain that "they were not grounded in fact," *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993), as the only reasonable inference to be drawn from the documents attached to the FAC is that the transfers upon which all of AJ Energy's claims were based did not occur. Put simply, "[s]elf-contradictory assertions," such as AJ Energy's, "clearly lack reasonable evidentiary support, in violation of Rule 11(b)(3)." *Colliton*, 2008 WL 4386764, at *13; *see also Levine*, 2 F.3d at 479 ("[T]he creativity of an attorney may not transcend the facts of a given case; counsel in his attempts at creativity concocted 'facts' that were not well grounded, and therefore exceeded the bounds of conduct . . . incorporated in Fed. R. Civ. P. 11." (internal quotation marks omitted)).

The Court would be on firm ground imposing sanctions if all it had to go on were the FAC and its attachments. But, of course, that is not all the Court has to go on: It now has the benefit of an expanded record, which includes multiple affidavits from representatives of Deutsche Bank unequivocally denying the existence of the transfers or the "common account" at the heart of the alleged transactions and, more importantly, the Sewing affidavit submitted by AJ Energy, which is almost certainly a forgery. Nor is it a particularly good forgery. As Woori Bank and the Frankfurt Regional Court point out, the affidavit "bears numerous indicia of inauthenticity on its face," from "formatting and syntax errors" that are almost unimaginable in an affidavit from "a major international bank's CEO," to various irregularities in the apostille, to the fact that the first and last pages of the affidavit appear to be bound using red ribbon through three holes with grommets but the three holes are not visible on the other scanned pages. ECF No. 57, at 1-3; *see also* ECF No. 61-4, at 1-3. The submission of such a document is, by itself,

enough to warrant sanctions, if not worse. *See, e.g.*, *Bravia Capital Partners Inc. v. Fike*, No. 09-CV-6375 (JFK), 2015 WL 1332334, at *18 (S.D.N.Y. Mar. 25, 2015) ("The submission of false documents is clearly sanctionable."); *DAG Jewish Directories, Inc. v. Y & R Media, LLC*, No. 09-CV-7802 (RJH), 2010 WL 3219292, at *4-5 (S.D.N.Y. Aug. 12, 2010) (imposing sanctions where there was "overwhelming objective evidence demonstrating" that the plaintiff submitted forged documents to the Court).

That principals of AJ Energy may have vouched for the facts asserted in the FAC (or provided the purported Sewing affidavit to counsel) makes no difference. It is true that an attorney is generally "entitled to rely on the objectively reasonable representations of the client." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995). But an attorney may not simply take her client's word on faith where that word would be easily proved (or disproved) through a reasonable investigation or where red flags should have (and would have) alerted counsel to problems. *See, e.g.*, *Saltz v. City of New York*, 129 F. Supp. 2d 642, 646 (S.D.N.Y. 2001). In this case, a reasonable investigation would undoubtedly have disproved AJ Energy's tale of international intrigue, as consistent and verifiable documentation should have been readily available or easy to come by. And there were red flags galore, from the inherent improbability that a company would transfer €5 *billion* after transferring and losing €3 billion, to the lack of any reasonable explanation for how AJ Energy obtained those sums of money in the first place, to the varying and inconsistent transaction dates and counterparties in the alleged transaction documents, to the non-matching signatures in Exhibits 9 and 12 of the FAC, to the fact that three different transactions were listed as having the same *Unique* Transaction Reference number. "Given the centrality of" the wire transfers to all of AJ Energy's claims, "any reasonable inquiry

into the factual basis of the pleading would have prevented" this case from advancing. *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 265 (S.D.N.Y. 2010). "Such indifference to the truth of the pleading's . . . most important factual allegation[s] . . . is the sort of conduct that Rule 11 . . . seek[s] to deter." *Id.* at 264.

Finally, even if AJ Energy and its counsel had an objectively reasonable basis to file this lawsuit in the first instance, sanctions would be warranted based on their persistence in the face of evidence that their allegations were "utterly lacking in support." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (internal quotation marks omitted). Significantly, "a litigant's obligations with respect to the contents of . . . papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendment, subdivisions (b) & (c). Thus, "a party is not immune from sanctions merely because it had a reasonable basis at the time it filed its initial pleading to believe that its claim was valid. Instead, a court may impose sanctions on a party for refusing to withdraw an allegation or claim even after it was shown to be inaccurate." *Galin*, 283 F. Supp. 3d at 202 (citations, internal quotation marks, and alterations omitted). Here, even if the filing of the initial Complaint could be chalked up to excessive credulity, the same cannot be said for AJ Energy's filing of the FAC, its opposition to Woori Bank's motion to dismiss, or its submission of the purported Sewing affidavit. No later than Woori Bank's April 2018 letters, AJ Energy and its counsel knew, or should have known, that the central allegations were unsupportable. Their decision not to withdraw this suit at that point — indeed, to double down on their claims — "took their actions outside the ambit of 'zealous

advocacy' and into the realm of Rule 11 sanctions." *Galin*, 283 F. Supp. 3d at 203; *see also, e.g.*, *City of Yonkers v. Otis Elevator Co.*, 106 F.R.D. 524, 525 (S.D.N.Y. 1985) (imposing sanctions where "[t]he papers and affidavits submitted by the defendants [were] more than sufficient to persuade the Court that the plaintiffs' allegations of fraud had no basis in fact").[15]

That leaves only the question of what sanctions to impose. Although the purpose of sanctions is deterrence, and not reimbursement, *see, e.g.*, *LeFlore v. Marvel Enter. Grp.*, 493 U.S. 120, 126 (1989), substantial sanctions are warranted here given the egregious nature of the conduct at issue. One appropriate sanction is plainly dismissal of the FAC with prejudice, which, among other things, will help prevent future fraudulent lawsuits based on the factual allegations pressed here. *See, e.g.*, *Colliton*, 2008 WL 4386764, at *15; *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 400 (S.D.N.Y. 2007); *see also Samuels v. N. Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991) ("A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." (internal quotation marks omitted)). That sanction alone, however, would not provide sufficient deterrence — both because it would merely leave AJ Energy and its counsel in the same position they were in prior to bringing this lawsuit and because the Court has already concluded that dismissal is warranted for failure to state a claim. Thus, an order directing AJ Energy and its counsel, jointly and severally, to pay Woori Bank's "reasonable attorney's fees and other expenses directly resulting from the violation" is also warranted. Fed. R. Civ. P. 11(c)(4). In theory, that could support an order directing AJ Energy and its counsel to pay *all* of

---

[15] The foregoing reasons provide ample basis for sanctions. Thus, there is no need to reach Woori Bank's alternative argument that sanctions are warranted on the ground that the FAC was brought for an improper purpose. *See* ECF No. 34, at 21-22.

Woori Bank's attorney's fees and costs, including the fees and costs associated with preparation of the pre-motion-to-dismiss April 2018 letters. Exercising its discretion, however, the Court will award Woori Bank only the fees and costs associated with briefing its Rule 12(b)(6) motions and the Rule 11 motions. Such a sanction, combined with dismissal with prejudice, is a reasonably accurate measure of the harm AJ Energy and its counsel have caused. *See Galin*, 283 F. Supp. 3d at 204 (citing cases).

### D. AJ Energy's Motion

By contrast, there is no merit to AJ Energy's motion for sanctions; indeed, it is borderline sanctionable in its own right. AJ Energy's motion centers on the claim that the Kaba affidavits are "perjured" because Kaba is "a Deutsche Bank, New York" employee who could not "have any knowledge about Deutsche Bank AG, Frankfurt's transactions." ECF No. 48, at 7, 16, 25. But AJ Energy provides no evidence to support the claim that Kaba is "a Deutsche Bank, New York" employee much less that he lacked authorization to attest to the facts set forth in his affidavits. The closest AJ Energy comes to such "evidence" are two purported recorded telephone calls to unnamed "bankers" at "Deutsche Bank New York" — but both bankers (if that is, in fact, what they are) worked in "private wealth" management and were unsurprisingly unable, during an unsolicited customer service call, to speak to particular accounts opened abroad. *See* ECF No. 48-1, Exh. 4, at 18-29. Thus, AJ Energy falls far short of presenting the sort of "extraordinary circumstances" that would warrant Rule 11 sanctions. *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 478 (S.D.N.Y. 2013).

### CONCLUSION

For the reasons stated above, Woori Bank's motion to dismiss the FAC and its motion for

sanctions are GRANTED, AJ Energy's own motion for sanctions is DENIED, and the FAC is dismissed with prejudice in its entirety.[16] **Within twenty-one days of the date of this Opinion and Order**, Woori Bank shall submit a detailed accounting of the attorney's fees and costs it incurred in connection its Rule 12(b)(6) motions and the Rule 11 motions, supported by appropriate contemporaneous documentation.  AJ Energy shall file any opposition **within two weeks of Woori Bank's accounting**.  No reply shall be filed absent leave of Court.

The Clerk of Court is directed to terminate ECF Nos. 24 and 33 and to close the case.


SO ORDERED.

Dated: September 26, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[16]      In light of the conclusion that dismissal with prejudice is an appropriate sanction for the misconduct of AJ Energy and its counsel, the Court need not spill further ink addressing whether leave to amend would have otherwise been appropriate except to say that it would not have been, as any amendment would be futile under the circumstances.  *See, e.g.*, *Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) ("[I]t is proper to deny leave to replead where . . . amendment would be futile.").